THE PITTSBURGH, FORT WAYNE, AND CHICAGO RAILWAY COMPANY v. RUBY.

PRACTICE.—*Special Verdict.*—*Draft by Counsel.*—It is the duty of the court, whenever a special verdict is demanded, to give each of the parties the privilege and time required to prepare, with care, the draft of a special verdict. If either of the parties should refuse to avail himself of this right, he cannot complain of undue advantage gained by the other party in thus presenting his views of the evidence to the jury.

RAILROAD.—*Injury to Employee.*—*Ordinary Care.*—Where an employee of a railroad company is injured in running a train, and such injury is caused by the negligence of his co-employee, the company is only responsible for ordinary care.

EVIDENCE.—*Negligence.*—*Specific Acts.*—For the purpose of showing that the officers of a railroad corporation did not exercise due care, prudence, and caution in the employment of, or in retaining in service, careful, prudent, and skilful persons to manage and operate its road, and for the purpose of charging such corporation with notice of the incompetency of its employees, specific acts of negligence or unskilfulness of such employees may be proved, and it may be proved that such acts were known to such officers prior to the employment of such persons, or that such employees were retained in such service after notice of such acts.

PRINCIPAL AND AGENT.—*Notice to Corporation.*—Notice to an agent of a corporation relating to any matter of which he has the management and control, is notice to the corporation.

PRACTICE.—*Petition for Rehearing.*—Questions presented for the first time on a petition for a rehearing will not be considered by this court.

APPEAL from the Allen Circuit Court.

The Pittsburgh, Ft. Wayne, and Chicago Railway Company *v.* Ruby.

BUSKIRK, J.—This was a suit against the railway company for an injury which is alleged to have occurred by the negligence of a co-employee. The plaintiff was a brakeman on an express train, and was injured while in the discharge of his duty, by a collision between the express and a freight train which was standing on a side track, waiting for the express train to pass. The switch had been left open, as was alleged, by the carelessness of David Kiser, the conductor of the freight train. It is alleged in the complaint that David Kiser and all the employees on the freight train were negligent, unskilful, and incompetent; and that the defendant negligently employed them, and had retained the said Kiser in her employment after she had received notice that he was negligent, unskilful, incompetent, and reckless in the discharge of his duties as such conductor.

As there is no question raised as to the sufficiency of the pleadings, we do not deem it necessary to make any fuller statement of the issues than is above given.

The case was tried by a jury. The court, upon the demand of the defendant below, required the jury to find a special verdict. Inasmuch as the errors assigned relate to the special verdict and the refusal of the court to award a *venire de novo* and to grant a new trial, we deem it necessary to a proper understanding of the questions raised, to reproduce the special verdict, and the motions, including the reasons assigned for a *venire de novo* and a new trial. The special verdict and motions are as follows:

"We, the jury, having been required to find a special verdict in said cause, do find the facts in said cause to be as follows: 1. The defendant is a railroad corporation, owning and operating a railroad extending from the city of Pittsburgh, State of Pennsylvania, to the city of Chicago, in the State of Illinois, and running through Allen county, in the State of Indiana, carrying both freight and passengers, and was operating said road on the 15th day of October, 1865, and for several years prior thereto; that on said 15th day of October, 1865, the plaintiff was in the employ of said

company as fireman upon one of their locomotive engines, attached to, and drawing a passenger train over and upon the line of said road.

"2. That on said day the plaintiff, as such fireman, was in the discharge of his duty, on a passenger train, running east along and upon the track of said road; and that when said passenger train had nearly reached the station at Arcola, in said county, a freight train was standing upon the side track at said station, and it having been necessary to procure wood and water for the locomotive engine attached to said freight train, and the wood and water being near the main track, the said engine and tender attached to said freight train were run out of the west end of the side track, through the west switch, and backed down east on the main track, to said wood and water station, and having procured said wood and water, moved forward on the main track to said switch, and then backed down again on said side track, and was again coupled to said freight train; but that after said engine and tender were so backed down said side track, said switch was carelessly and negligently left open, and in such a condition as to connect the said side track with the main track west of said switch, and to throw the train upon which the plaintiff was performing his duty as fireman aforesaid, upon the side track, upon which stood the freight train, as aforesaid; that when said passenger train had come within about three-fourths of a mile of said station, the said passenger train was checked up by the application of the brakes, as was usual when approaching a station; and thereupon the employees of said company at said station at Arcola signalled said passenger train to come on, that all was right. And thereupon said train, in obedience to said signal, advanced, and when it reached the switch, was running at the rate of about twenty-five miles per hour; and in consequence of the situation, as aforesaid, of said switch, said passenger train ran upon said side track and collided with said freight train; that when said engine, attached to said passenger train, had passed said switch and entered upon said

side track, and when the collision was inevitable, and the engineer controlling said engine had jumped from the same, then the plaintiff jumped from said engine, and was greatly injured thereby in and about his head, chest, and back, his head being severely cut, and three of his ribs being broken, and one of the bones of his foot being broken; by means of which injuries his general health was permanently impaired and he rendered incapable of performing any labor since then; that the plaintiff, in thus jumping from said engine, exercised due care and prudence, and to have remained longer upon the engine would have been more perilous than to have jumped therefrom; that the injuries so received by plaintiff took place without any fault or negligence on his part; and that the collision aforesaid took place without any fault or negligence on the part of any of the persons operating the train upon which the plaintiff was employed; that said collision took place about eleven o'clock of the night of said day.

"3. That said collision was of such force and violence as to force the tender, attached to the engine of the passenger train, through the express car immediately in the rear thereof, and then to throw said express car forward through the cab of said engine (the cab being the place on the engine where the engineer and fireman stand), breaking and displacing said cab, and jamming the end of the said car up against the head of the boiler.

"4. That one David Kiser was the conductor of said freight train at the time of said collision, and that he had been in the employment as a conductor for a year or more prior to said collision; that it was his duty as such conductor to have seen that the switch aforesaid, after the engine attached to his train had used it, by passing through it and back for the purpose of procuring wood and water, was properly adjusted, so as to keep the approaching train, upon which the plaintiff was employed, upon the main track; and that it was by his gross negligence, carelessness, and want of attention, that the switch was left thus unadjusted, thereby causing the collision aforesaid.

"5. That at the time of the collision aforesaid, the following rule, specifying the duties of conductors with reference to switches, was in force: 'Conductors of trains shall attend to the shifting and replacing switches used by their engines, or trains, at stations and turnouts; and they will be held responsible for the proper adjustment of the switches, which may have been used by them or their trains.'

"6. That about a year ago, before the collision aforesaid, and while the said David Kiser was in the employment of the defendant as a conductor of a freight train on said road, he carelessly and negligently left a switch open at a station called Valparaiso, on said road, which it was his duty as such conductor to have closed, and that in consequence thereof an accommodation train passing along said road was thrown off of the main track upon the side track, and nearly collided with the train of said Kiser on the side track, but no actual collision took place.

"7. That the master of transportation on that division of the road between Fort Wayne and Chicago, embracing said Valparaiso, was on board said accommodation train, and had knowledge of said circumstance.

"8. And that said master of transportation, by virtue of his said office, had direct charge and supervision of all conductors and brakemen operating on all freight trains running between Chicago, Illinois, and Fort Wayne, Indiana; that at Valparaiso, the depot had a yard-master, whose business it was to attend to the adjustment of switches; but it was usual and customary at said station for the conductors of the trains using said switches to properly adjust them, and it was their imperative duty to see that it was done.

"9. That afterward, in the fall of 1865, but the precise time the jury are not able, from the evidence, to determine, the said Kiser, being in the employment as a conductor of a freight train, received a telegram from the superintendent of the road, while at Pierceton, a station on the line of said railroad, directing him to run to Kos-

The Pittsburgh, Ft. Wayne, and Chicago Railway Company *v.* Ruby.

ciusko, a station about three miles distant due west, and then wait for a train passing east; that the telegram was received in the day time, and that it was his duty to read the same and then pass it to the engineer; that he did read said telegram and did then hand the same to the engineer; that when his train approached Kosciusko, the station at which he was to stop and wait for the train passing east, the engineer whistled down brakes, but the said Kiser, as such conductor, signalled the engineer to go ahead, whereupon the train went on and passed Kosciusko about half or three-quarters of a mile. After passing Kosciusko, the conductor, Kiser, went forward to the engineer, re-read the orders, and then the train was backed up to Kosciusko.

"10. That in failing to read and understand said order, he was guilty of negligence, and in signalling the engineer to go on when he had ordered down brakes, he was guilty of gross negligence; and after the collision at Arcola, the said Kiser continued in the employment of the defendant as a conductor; that the said Kiser was a careless and unfit person for the position of a conductor on the railroad; that the defendant, by the exercise of ordinary care, could have ascertained his unfitness for said position before the collision at Arcola, as aforesaid.

"11. And from the facts and circumstances, it is to be inferred that the defendant had knowledge of his unfitness for said position, and therefore, we find that the defendant had such knowledge before said collision.

"12. We further find that the defendant was guilty of negligence and want of proper care in retaining said Kiser in their employment as a conductor, up to the time of the collision, as aforesaid.

"13. We further find that from the negligence of the defendant in retaining said Kiser in their employment as such conductor, the collision aforesaid happened, whereby the plaintiff was injured as aforesaid, without any fault or negligence on the part of the plaintiff.

"14. We further find that at the time said Kiser received

said telegraph order at Pierceton, from the superintendent, a rule was in force as follows: 'The engine man of a locomotive is under the orders of the conductor of the train, so far as relates to the starting, stopping, and speed of the train, shifting cars, etc., but the conductor has no authority to direct the engine man to leave in advance of his schedule time, nor will the engine man be excusable in obeying an order from the conductor that may endanger the safety of the train, or require a violation of this rule.'

"15. If, upon these facts, the law is with the plaintiff, then we find for the plaintiff, and assess his damages at three thousand dollars.                    O. LINK, Foreman.

"And if the law is with the defendant, then we find for the defendant.                    O. LINK, Foreman."

And afterward, to wit, on the 8th day of March, 1869, the same being the 13th judicial day of the term of court last mentioned, the following further proceedings were had by said court in the above entitled cause, to wit:

"Come the parties, and said defendant moves the court for a *venire de novo* in these words:

"Arthur Ruby *v.* Pittsburgh, Fort Wayne, and Chicago Railway Company. The said defendant moves the court to set aside the verdict in this case, and grant a writ of *venire de novo*, upon the following grounds, viz.:

"1. That said verdict does not find facts only, but, on the contrary, the jury, on the question of defendant's negligence, instead of finding and returning the facts from which the conclusions of law, as to negligence, should be drawn by the court, find negligence as a fact, as a conclusion of mixed fact and law.

"2. For that the verdict does not purport to contain all the material facts given in evidence on the trial.

"3. For that the said verdict does not show that other facts were not proved on the trial, except those stated in the verdict and not returned in it, and is essentially a general verdict, instead of being special, in accordance with the order of the court.

The Pittsburgh, Ft. Wayne, and Chicago Railway Company *v*. Ruby.

"4. For that the verdict does not state the facts upon which the jury find that the defendant was guilty of negligence in the employment of, or the retention of said Kiser in her employment, after knowledge on her part that he was careless and negligent in his character as conductor.

"5. For that the said verdict does not find or contain the facts upon which the jury conclude that the said Kiser was careless and negligent in his character as conductor, and that the defendant might, by the ordinary exercise of diligence, have known or ascertained the same.

"6. That said verdict finds that said plaintiff was injured by jumping from the engine, and not by collision of the two engines; which is not within any issue raised on the plea to the complaint.

"7. For that said verdict finds that Kiser, the conductor of the freight train, through his 'gross carelessness, negligence, and want of attention,' left the switch open and unadjusted at Arcola Station; but said verdict does not find or contain the facts constituting such gross negligence, etc.

"8. For that the jury, by the said verdict, without finding the facts from which they result, or that authorize the same, have found 'that the said Kiser was a careless and unfit person for the position of a conductor on the railroad; that the defendant, by the exercise of ordinary care and diligence, could have ascertained his unfitness for said position before the collision at Arcola; and from the facts and circumstances, it is to be inferred that the defendant had knowledge of his unfitness for said position; and, therefore, we find that defendant had such knowledge before said collision. We further find that the defendant was guilty of negligence and want of proper care in retaining said Kiser in their employment as a conductor up to the time of the collision. We further find that from the negligence of the defendant in retaining said Kiser in their employment as such conductor, the collision aforesaid happened, whereby the plaintiff was injured.'

"9. For that the said verdict contains a recital of the evi-

dence of facts and conclusions of law thereon, but not the facts themselves, from which such conclusions result.

" 10. For that the said verdict does not purport to embrace a finding upon all the issues in the cause, as required by the court.

" 11. For that the said verdict does not find that the plaintiff did not know of the alleged carelessness of said defendant.

" 12. For that the jury does not find, by said verdict, that the said plaintiff did not know, and had not notice, that the said Kiser was careless and negligent, as alleged by plaintiff.

" 13. Because the said verdict was drafted by the plaintiff's attorney, and submitted to the jury, and the same returned by the jury in precisely the same terms as drawn by the plaintiff's attorney, over defendant's objection."

And afterward, to wit, on the 13th day of March, 1869, the same being the 18th judicial day of the said last mentioned term of said court, the following proceedings were had by said court in the above entitled cause, to wit:

"Come the parties, and the motion for a *venire de novo* heretofore made in this behalf is, by the court, after argument of counsel, overruled, to which ruling of the court said defendant excepts, and thereupon moves the court for a new trial on written reasons filed, in these words:

"Arthur Ruby *v.* Pittsburgh, Ft. Wayne and Chicago Railway Company. Court of Common Pleas, February term, 1869. The defendant moves the court to grant a new trial in this cause, for the following reasons, viz.:

" 1. Because the damages are excessive.

" 2. Because the verdict is not sustained by sufficient evidence.

" 3. Because the verdict is contrary to law.

" 4. Because the court erred in permitting the following questions of the plaintiff, and the answers thereto of the witness Owen Slater, to be offered and read in evidence, on the trial of said cause, over and against the objections there-

to, and the exception of the defendant taken at the time, to wit:

" 'Ques. 1.   State what, if anything, you know regarding any act or acts of negligence on the part of said Kiser, while in the capacity of conductor on the road of said company? Ans.  I know of one; it was in the fall of 1865; I was at that time in the employ of said company as an engineer; I was pulling Kiser's train; we were behind time, running by telegraph orders; at Pierceton we received orders against trains sixteen and fourteen; we were to go to Kosciusko for train sixteen and to Warsaw for train fourteen; he read both orders to go to Warsaw; when we came to Kosciusko he failed to stop me till I had run between a half and three-quarters of a mile past the station.

" 'Ques. 4.   State what, if anything, Kiser did or said. Ans.  He motioned me to go ahead when I whistled down brakes.

" 'Ques. 5.   State whether or not Kiser came forward. Ans.  He came forward and asked me if I wasn't going to Warsaw for train sixteen; I told him the order was to go to Kosciusko; he said if it did, he was mistaken; he re-read the order.

" 'Ques. 6.   How far were you past the station? Ans. We were between one-half and three-quarter miles beyond the station when we stopped.

" 'Ques. 7.   Was it not his place to understand the order before telling you to go ahead? Ans.   It was.'

"The defendant objected to the foregoing evidence at the time it was offered, because it was irrelevant, leading, and because it sought to show that Kiser was careless and negligent in his general character as conductor by proof of a specific act of alleged negligence, and because it does not appear that said act occurred before the accident to plaintiff; but the court overruled the defendant's objection, and admitted the evidence, to which the defendant at the time excepted.

" 5.  Because the court permitted the witnesses Roelle and

Strong, on behalf of the plaintiff, over the objection and exception of the defendant, made at the proper times, to testify to an act of alleged negligence on the part of David Kiser, while acting as conductor of a train of cars of defendant, in omitting to close a switch at Valparaiso station, on said railway, some time in the fall of 1865, after his (Kiser's) train had run through it on the side-track, and that a passenger train of cars a short time afterward ran in through the same switch on the side-track, in the rear of said Kiser's train; which said evidence, at the times it was offered, was objected to, because it sought to charge said Kiser with being careless and negligent in his general character as conductor, by proof of a single and specific act of alleged negligence, and is, and was, irrelevant and incompetent and does not support the issue, and because it does not appear when said act occurred, whether before the accident or not; but the court overruled the objection and let the evidence go to the jury, to which defendant excepted at the time."

The first error assigned is upon the action of the court in overruling the motion of the appellant for a *venire de novo.* In support of this motion, the appellant assigned thirteen reasons. The first, fourth, fifth, seventh, eighth, and ninth are, in substance, the same. It is stated in all of them that the jury failed to find the facts; in some of them it is alleged that the jury merely found conclusions; and in others it is averred that the special verdict only contained a recital of the evidence and the conclusions of law. To sustain this assignment of error but three points are relied upon and argued in this court:

1. That the verdict finds no facts from which it appears that the defendant was guilty of negligence in employing or in retaining in her employment David Kiser, the conductor, upon whose negligence this action is based. The special verdict contains fifteen clauses or specifications. The first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, and fourteenth find special facts. The special facts found by the jury are copied into this opinion, and this renders it unnecessary that we should again state them. The tenth finds,

from the facts found, that David Kiser had been guilty of gross negligence. The eleventh finds that the defendant had knowledge of such gross negligence prior to the collision complained of. The twelfth finds that the defendant was guilty of negligence and want of proper care, in retaining the said Kiser in her employment, after notice that he had been guilty of gross negligence. The thirteenth finds that, from the negligence of the defendant in retaining the said Kiser in her service, after notice of his gross negligence, the collision complained of occurred, and that by such collision the plaintiff was injured without any fault or negligence on his part. The fifteenth finds for the plaintiff and assesses his damage at three thousand dollars, if the court should, upon the facts found, be of the opinion that the plaintiff was entitled to recover; otherwise, the finding was for the defendant.

We are clearly of the opinion that, from the facts found, the appellant was guilty of negligence and a want of proper care, in retaining in her employment the said Kiser, after she had received notice that he had been guilty of gross negligence; and that the conclusions stated by the jury are fully supported by the facts found.

2. That the proximate cause of the injury found in the verdict is at variance with that stated in the complaint. It is insisted that there is a variance, in this, that it is alleged in the complaint that Kiser and Cummings, the conductor and brakeman on said freight train, carelessly and negligently failed to properly arrange and adjust the switch, but, leaving the same unadjusted and unarranged, signalled the passenger train to advance; and that the jury found that the employees of said company, at said station of Arcola, signalled the passenger train to advance.

We do not think that there is any substantial or material variance between the allegations of the complaint and the special verdict. The jury found that Kiser had carelessly and negligently left the switch open, unadjusted, and unarranged, and that the employees of the company at said station, in-

stead of Kiser, had given the signal to the passenger train to advance.

It is quite obvious that the real cause of the collision, which resulted in the injury of the plaintiff, was in leaving the switch open. If the switch had been properly closed and adjusted, the passenger train would have remained on the main track, and, consequently, there would have been no collision and no injury. There is no evidence that the employees of the company at said station had any knowledge that the switch was open. The rules and regulations of the company made it the duty of the conductor to close and adjust the switch. The persons who gave the signal had the right to presume that the conductor had discharged his duty, and were guilty of no negligence in giving the signal to advance.

The appellant, to maintain his position that there is a variance between the complaint and the special verdict, refers to, and relies upon, the case of the *Pittsburgh, Fort Wayne, and Chicago Railroad Company* v. *Evans*, 53 Penn. St. 250. We have examined that case with care, and are clearly of the opinion that it does not sustain the position assumed by the learned counsel of the appellant. In fact, there is no question of variance in the case. WOODWARD, C. J., states the case thus: "The plaintiff, a butcher, residing in the suburbs of Alleghany City, sues the railroad company for an injury he sustained from a locomotive passing along their road, at the moment he was about to cross it on his way to the Pittsburgh market-house; but the special verdict fails to find that the plaintiff was travelling along a public street, in pursuit of his lawful business, and was compelled to cross the railroad to reach his point of destination. For aught that appears in the special verdict, he was unnecessarily upon the railroad—may have been there wantonly and for mischievous purposes. * * Now, unless he was a traveller, he had no right to be on the track of the road. But all the facts to show that he was lawfully there are omitted from the special verdict.

"Again, the special verdict finds that the defendants were running their engine at a proper rate of speed, and were ringing the engine-bell, which was a suitable bell for the purpose. Then it established that the defendants were in the lawful use of their railroad, whilst it is not found that the plaintiff was lawfully upon it. How could a court render judgment for the plaintiff and against the defendant upon such a finding?"

The judgment was reversed, not on the ground of a variance, but because the jury failed to find a fact which was essential to the right of the plaintiff to recover, and that fact was, that the plaintiff was lawfully upon the railroad; for, if he *was not*, he was a trespasser, and the injury was caused by his fault, and not that of the railroad company.

3. That the special verdict was written out, in full, by the attorneys of the plaintiff, and was in that form submitted to the jury by the court; and that the jury returned into court the said verdict, without change or alteration, as their verdict, except that the name of the foreman of the jury was signed thereto, and the amount of the finding was inserted. It is insisted by the appellant that the proper practice, in such a case, is to permit the jury to find the facts, and leave the court or counsel to put them in form afterward; and in support of this position, reference is made to the case of *Wallingford* v. *Dunlap*, 14 Penn. St. 31.

In that case the jury was required to find a special verdict. The court assumed that certain facts were undisputed, and directed the jury to find specially as to the disputed facts. The judgment of the court was based, in part, upon the facts found by the jury, and in part upon what the court assumed to be undisputed facts. The court held that the action of the court below was entirely anomalous, unknown, unprecedented, and unrecognized by the practice, either in England or in this country; and that it was the duty of the jury to find the facts, and of the court to pronounce the law upon the facts so found; and that the court could not intend any fact not found by the jury. The following language is

used by the court: "The special verdict is defective. We have no power to amend it. It is the duty of the plaintiff's counsel to have the special verdict properly drawn up, settled, and entered on record: 1 Johns. Cas. 393; Col. Cas. 104. If the facts are reduced to writing at the time of the trial, and have the assent of the jury, the verdict may be moulded into form afterward, with the approbation of the court."

In our judgment, this authority fully sustains the action of the court below. It is expressly declared, that "it was the duty of the plaintiff's counsel to have the special verdict properly drawn up, settled, and entered of record."

According to the English practice, the minutes of a special verdict intended to be found, ought to be signed by one of the counsel for each party, and should be approved by the judge, it being his province to take care that the question of law be fairly stated; and they ought to be delivered to the jury before they find a verdict. If all the counsel of one party refuse to sign the minutes, the judge may direct the jury to find a verdict from the minutes as signed by the counsel of the other party; Bac. Abr., title Verdict, let. D. And if the verdict be defective, so that the court cannot give judgment thereon, they will amend it, if possible, by the notes of the counsel, or the memory of the judge who tried the cause. Tidd Pr. 897.

In *Miller* v. *Shackleford*, 4 Dana, 264, it is said:

"A jury is not expected to be able (especially in a complicated case) to draw up a special verdict without assistance. The facts are to be found upon their own convictions and responsibility; the form of the finding and its sufficiency as to the extent of the facts embraced, must be looked to by the court.'

Again, it is said in the same case:

"And objections have been taken to the supposed improper agency of the court, and of the counsel by the permission of the court, in producing the verdict as it was ultimately rendered.

The Pittsburgh, Ft. Wayne, and Chicago Railway Company *v*. Ruby.

"It seems that the counsel on each side was permitted to present the draft of a verdict, which, after being inspected by the court, was submitted to the jury," with proper instructions. "Upon looking into the authorities on the subject of making up a special verdict, we are satisfied that there was not, in this instance, any excess of authority, or any undue interference on the part of the court."

This case is directly in point. In the case under consideration, the attorneys for each party, by the permission of the court, prepared and submitted to the court the form or draft of a special verdict, which was by the court submitted to the jury with proper directions as to their duty in the premises. The jury, after due consideration, found that the facts stated in the draft prepared by the plaintiff's counsel were true, and the foreman of the jury signed his name thereto and inserted the amount of the finding, and the same was returned into court as the verdict of the jury.

It is quite clear from the American authorities and practice, that it is no objection to a special verdict that it was drawn up by the counsel in the case, in order to show what facts must be inserted, if found true, and the proper form of stating them; provided, that the rights and duties of the jury, and the effect of their verdict, were fully explained to them by the court. The appellant demanded of the court that the jury should find a special verdict. Thereupon, the appellee asked the court to grant time to prepare the draft of a special verdict. The necessary time was granted. The counsel of each party prepared a draft of a special verdict, which was submitted to the court. The court, after inspection, submitted them to the jury with proper instruction. The jury had before them the outline of the facts that each party claimed had been proved on the trial, and the proper form and manner of stating them, with the instructions of the court and the argument of counsel. The evidence was fresh in their recollections. They were entirely competent to determine what facts had been proved. They were required to find the facts from their own convictions, and up-

on their own responsibility. They had the undoubted right to adopt either draft submitted to them, if they found, as a question of fact, upon their oaths, that it contained the facts; or they had the right to alter or change them to correspond with their recollections of the testimony; or they had the right to prepare a special verdict for themselves. We think that it is the duty of the court, whenever a special verdict is demanded, to give to each of the parties the privilege and time required to prepare with care the draft of a special verdict. If either of the parties should refuse to do so, this would in no manner deprive the other party of the right; and the party refusing would have no right to complain that the other party had gained an advantage over him by presenting his views of the evidence to the jury. Jurors are very competent to understand the evidence, find facts, and draw conclusions from the facts found; but as a general rule, and especially in complicated cases, they are not equal to the task of preparing a special verdict. They do not know what facts should be found to cover the issues, nor the manner of stating them.

The court should not be required to prepare a special verdict, for many reasons. In the first place, the opinion of the court as to what had been proved would have undue influence with the jury. In the next place, the court is required to pass upon the form and sufficiency of the special verdict. And in the third place, after the verdict has been returned, the court is frequently required to pass upon motions for *venire de novo*, new trial, and in arrest of judgment; and this cannot be fairly and satisfactorily done, if the judge has been required to prepare a draft of what he believed had been proved on the trial.

The counsel engaged in the trial of a cause understand the issues involved, the facts necessary to be found to cover the issues, the testimony in the cause, and the requisite form to be adopted. Nor do we think that there is any danger that an attorney would take advantage of his position to deceive or mislead the jury. An attorney acts under the solemnity

of an oath, and the responsibility that he owes to the court, the jury, his client, and the public; and all these weighty considerations would induce him to act fairly and truthfully in preparing a special verdict. Besides, he knows that if he does not state the facts correctly, the fraud would be discovered by the jury, and would operate to the prejudice of his client and the injury of his cause. We think the court committed no error in overruling the motion for a *venire de novo.*

The next assigned error is upon the refusal of the court to grant a new trial. Various reasons were assigned in the court below in support of this motion; but the learned counsel of appellant have discussed but one question, and that is, that the court admitted illegal and incompetent evidence.

The plaintiff seeks to recover against the defendant for an injury received by him in a collision, which occurred on the road of the defendant, between a passenger and freight train, which collision the plaintiff alleges was caused by the gross negligence of the conductor of the freight train. The plaintiff was in the employment of the defendant as fireman upon the passenger train. The plaintiff and Kiser were co-employees of the defendant. The court, over the objection of the defendant, permitted the plaintiff to prove particular acts of carelessness and negligence on the part of David Kiser, as conductor of a freight train on the road of defendant. Did the court err in the admission of this evidence? If it was admissible for one purpose, then the court committed no error, although it was inadmissible for another purpose. To entitle the plaintiff to recover, it was necessary for him to establish two facts; first, that he had been injured, without fault on his part, by the carelessness, neglect, or want of proper skill and competency of another employee of the defendant; second, that the defendant had not exercised ordinary care and prudence in the employment of such person, or that he had been retained in the employment of the defendant after it had received notice that he

was careless and negligent, or lacked skill and capacity to properly discharge the hazardous duties of his position. The evidence was clearly not admissible to prove that Kiser was guilty of negligence on the occasion complained of. Nor could the proof of former acts of carelessness and neglect on the part of Kiser raise any presumption that he was guilty of negligence at the time when the plaintiff was injured. Negligence is a question of fact, and not of law, and must be determined by the facts and circumstances that occurred at the time, as detailed by the witnesses of the transaction.

We entertain no doubt that the evidence was admissible for the purpose of proving that the defendant had retained in her service and employment David Kiser, after she knew, or ought to have known, that he was careless and negligent. It was held, by the court of appeals of the State of Kentucky, in the recent case of *The Louisville and Nashville Railroad Co.* v. *Collins*, 2 Duvall, 114, that a railroad corporation is to be regarded as constructively present in all acts performed by its general agents, within the scope of their authority, *i. e.*, within the range of their ordinary employment.

REDFIELD, in his valuable work on railways, says of this decision: "The consequences of mistake or misapprehension, upon this point, have led many courts into conclusions greatly at variance with the common instincts of reason and humanity, and have tended to interpose an unwarrantable shield between the conduct of railway employees and the just responsibility of the company. We trust that the reasonableness and justice of this construction will, at no distant day, induce its universal adoption." 1 Redf. Railw. 530. We think that the rule established in the above case is founded in reason and justice, and we concur with Judge REDFIELD in the hope that it will soon be adopted as the law of the land.

Is it not too obvious to admit of serious doubt, that the plaintiff had the right to prove, for the purpose of showing that Kiser had been retained in the employment of the de-

fendant after notice of his incompetency, that he had been guilty of careless and reckless conduct in the presence and under the observation of the master of transportation and the general superintendent of the defendant's railway? But it is earnestly maintained by the learned counsel of the appellant, that the only evidence that was admissible, for the purpose of charging the company with notice as to the incompetency of Kiser, was his general character. We do not think so. It was not a question of character on the part of Kiser, but of knowledge on the part of the general officers of the corporation, for their knowledge was the knowledge of the corporation.

It is well settled, that when the precise act or omission of a defendant is proved, the question whether it is actionable negligence is to be decided by the character of that act or omission, and not by the character for care or caution that the person who may have committed the act may sustain. Suppose that the general character of David Kiser was not only good but very good, and that yet the general officers of the defendant's corporation had actual and personal knowledge, that he was, in point of fact, a careless, negligent, reckless, unskilful, and incompetent officer; or suppose that his general reputation was, that he was a sober man, and that, in point of fact, the general officers knew that he was in the habit of getting drunk, and that when drunk he was desperate and reckless; or suppose that an engineer had not been in the employment of a railroad corporation long enough to have established a reputation for care or skill, and yet the general officers of the corporation had personal knowledge that he was careless, negligent, and unskilful; could it be maintained, under such state of facts, that the plaintiff would be denied the right of proving the actual facts, and that the corporation would be excused and justified in retaining in its employment such a person, and relieved from all liability for any acts that he might commit? No such a monstrous proposition can receive the approval and indorsement of this court. The practical effect of such a rule would be to

release railroad corporations from liability for any and all acts of negligence that may be committed by the employees of such corporations.

The appellant, in support of the position that proof of particular acts are not admissible, and that proof of general character only is admissible, refers to the following authorities: *Frazier* v. *The Pennsylvania R. R. Co.*, 38 Pa. St. 104; *Robinson* v. *Fitchburg, etc., R. R. Co.*, 7 Gray, 92; *Mitchell* v. *The Pennsylvania R. R. Co.*, 1 Am. Law Reg. 717; *Barton* v. *The State*, 18 Ohio, 221; *McDermott* v. *The State*, 13 Ohio St. 332; *Ellis* v. *Short*, 21 Pick. 142; *True* v. *Sanborn*, 7 Fost. N. H. 383.

We have examined, with care, the decisions above referred to, and find that none of them are in point, except the case reported in 38 Pa. State. The only point decided in the case of *Mitchell* v. *The Pennsylvania. R R. Co.*, *supra*, was, that a railroad company was not liable for an injury received by one employee by the negligence of another employee. It was the decision of a common pleas court in Pennsylvania, and the opposite doctrine has been enunciated by the Supreme Court of that state, and many of the other states.

The cases referred to in 13 Ohio State and 18 Ohio, *supra*, were criminal cases, in which it was correctly held that to convict a person of the offence charged in an indictment, it was not competent to prove that such person had previously been guilty of another and different crime.

The case referred to in 21 Pick., *supra*, was an action for an assault and battery, for violence used in arresting the plaintiff. The defendant, in order to excuse his violence in arresting the plaintiff, proved that when the arrest was made, the plaintiff was intoxicated, and that when he was in that condition, he was dangerous; and for the purpose of showing that ardent spirits had a specific and peculiar effect upon the plaintiff, increasing his power and making him furious and unmanageable, he offered to prove that more than a year after the alleged assault, the plaintiff, while intoxicated, threw stones at several persons, resisted the officers who arrested him, and otherwise exerted great power and fury. It was

correctly held that the offered evidence was irrelevant and inadmissible, and was correctly excluded.

The case of *True* v. *Sanborn*, *supra*, was an action for selling unwholesome beef. The plaintiff, for the purpose of showing that the defendant was guilty of selling unwholesome beef, offered to prove that on a certain occasion, several years prior to the sale of the beef, the defendant sold the meat of a swine slaughtered in a manner, and under circumstances, which rendered "it unwholesome and unfit for use." The evidence was rejected. The Supreme Court very properly held that the evidence was immaterial, irrelevant, and inadmissible.

The case of *Robinson* v. *Fitchburg and Worcester R. R. Co.*, *supra*, was an action by Robinson against the railroad company for an injury which he alleged had been caused by the negligence of an engineer of the company. Robinson was delivering wood at the side of the railroad track. He was not an employee of the railroad company. The plaintiff called the conductor of the train, and for the purpose of showing that the engineer was not a careful, skilful, and proper person to run the train, offered to prove specific instances of want of care in the engineer within three months of the injury, before or after.

The court say: "Evidence of specific acts of negligence and carelessness on the part of the engineer, in running the train on other occasions than the one in question, was clearly incompetent. It would not only lead to collateral inquiries, and so distract and mislead the jury from the true issue before them, but it had no legal or logical tendency to prove the point in issue. Because a man was careless or negligent of his duty in one or two specified instances, it does not follow that he was so at another time and under different circumstances. *Collins* v. *Dorchester*, 6 Cush. 396. The plaintiff did not offer to prove the general character of the engineer for care and skill in his business. Such testimony would certainly have been less objectionable, though not perhaps competent."

The Pittsburgh, Ft. Wayne, and Chicago Railway Company *v*. Ruby.

The plaintiff was not an employee of the railroad company. The liability of the company depended upon whether the engineer had been guilty of negligence, and not upon the carelessness of the company in employing or retaining the engineer in its service after notice of his incompetency. The ruling in the above case was correct. The evidence of specific instances of want of care was offered for the sole purpose of proving that the engineer had been guilty of negligence at the time complained of. For such a purpose the evidence was clearly inadmissible. If it had been necessary in that case, as it is in the case under consideration, to have proved that the company had been guilty of negligence in retaining the engineer in her employment, the evidence offered would have been admissible to charge the company with notice. But it was not competent to prove or as tending to prove negligence on the part of the engineer.

The case of *Frazier* v. *The Pa. R. R. Co. supra*, is directly in point. It was an action on the case brought against the railroad company by Frazier, who was a brakeman employed by the defendant, to recover damages for personal injuries received by him in the course of his employment, by reason of a collision of trains caused by the negligence of one of the conductors of the defendant.

The plaintiff proved that several collisions had occurred previously, and that they were produced by the careless and reckless conduct of the same conductor, and that the company had notice of such previous conduct of the conductor.

The court, in reference to the admission of such evidence, say: "The question of character thus became an important one, and we are constrained to say that it was tried on improper evidence. Character for care, skill, and truth of witnesses, parties, or others, must all alike be proved by evidence of general reputation, and not of special acts."

The court, in support of this position, referred to 7 Casey, 67, and 1 Greenl. Ev., secs. 461–9. The authorities referred to wholly fail to sustain the ruling of the court. Both

The Pittsburgh, Ft. Wayne, and Chicago Railway Company *v.* Ruby.

authorities relate to the mode of impeaching witnesses, and it was held, in accordance with the uniform and well settled doctrine, that a witness could not be impeached by proof of specific acts.

The effect of the ruling in the Pennsylvania case was, that a railroad corporation could not be charged with notice of the incompetency of one of its employees, by proof of special instances of want of care, skill, and capacity, although all the acts were well known to the directors, president, and superintendent, and that the only mode in which such proof could be made was by proof of general character. This case stands alone, unsustained and unsupported, so far as we have been able to discover, by any elementary work or decision. Nor ʻcan the decision be sustained in reason or on principle. Under the operation of that rule, corporations would in many instances be relieved of responsibility for injuries received, resulting from the reckless conduct of such corporations in employing and retaining negligent, careless, and unskilful persons to run and operate railroads. The safety and lives of the great mass of our people depend upon the care, prudence, and skill of those charged with managing and operating our numerous railroads. The care and skill should be in proportion to the dangers of the service. It is certainly a sound principle, that a contract to carry passengers differs from a contract to carry goods. For the goods the carrier is answerable at all events, except the act of God and the public enemy. But although he does not warrant the safety of the passengers, at all events, yet his undertaking and liability as to them goes to this extent: that he, and where the nature of the business requires agents, his employees, shall possess skill; and that so far as human care and foresight can go, he will carry them safely. He is bound to the highest degree of care that a reasonable man would use.

In a case like this, where the injury was caused by the negligence of a co-employee, the law only requires ordinary care. What is ordinary care cannot be determined abstractly.

It has relation to, and must be measured by, the work or thing done and instrumentalities used, and their capacity for evil as well as good. What would be ordinary care in one case may be gross negligence in another. The degree of care required is higher when life or limb is endangered, or a large amount of property is involved, than in other cases. These rules are founded in reason and sustained by the authorities, not only in this country, but in England; and every day's experience demonstrates their wisdom and policy and the necessity of a rigid adherence to and enforcement of them.

We think that it is well settled, not only by the authorities, but in reason and on principle, that for the purpose of showing that the officers of a railroad company had not exercised due care, prudence, and caution in the employment, or in retaining in service of careful, prudent, and skilful persons to manage and operate such road, and for the purpose of charging such corporation with notice of the incompetency of its employees, it may be shown that such employees had been guilty of specific acts of carelessness, unskilfulness, and incompetency, and that such acts were known to such officers prior to the employment of such agents, or that such employees had been retained in such service after notice of such acts; and in support of these propositions we refer to the following authorities:

1 Redf. Railw. 552; *Gahagan* v. *Boston and Lowell R. R. Co.*, 1 Allen, 187; *The Illinois Central Railroad* v. *Reedy*, 17 Ill. 580; *The Galena and Chicago Union R. R. Co.* v. *Yarwood*, 17 Ill. 509; *Quimby* v. *Vermont Central R. R. Co.*, 23 Vt. 387; *TheLouisville and Nashville R. R. Co.* v. *Collins*, 2 Duvall, 114.

We think the court committed no error in admitting such evidence.

It is insisted by the appellant that the verdict is not sustained by sufficient evidence. . We have carefully examined the voluminous evidence in the cause, and are well satisfied that the verdict was fully sustained by the evidence. The

cause was twice tried, both times resulting in a verdict for the plaintiff for the same amount. We cannot disturb the finding of the jury or the judgment of the court. The cause seems to have been twice fairly tried. The law favors and encourages special verdicts, and the courts will sustain them whenever it can be done consistently with the rules of law and the principles of justice. 2 Tidd Pr. 897; *Miller* v. *Shackleford*, 4 Dana, 264; *Pittsburgh, Fort Wayne, and Chicago Railroad Company* v. *Evans*, 53 Pa. St. 250.

The judgment is affirmed, with costs.

WORDEN, C. J., having been engaged as counsel in this cause, was absent.

### ON PETITION FOR A REHEARING.

DOWNEY, J.—There is a petition for a rehearing filed in this case, and, notwithstanding the general practice to allow or overrule such applications without any further opinion, we have thought it proper to state the reasons, to some extent, of our action in this case. The pressure of business upon us, but more especially the inconvenience of any other practice, compels us to make it a rule that we will not, on a petition for a rehearing, consider questions which were not presented to us in the first instance. It is our aim to give parties an opportunity to present their cases, and to sustain them by oral argument or by brief; but when they have had this opportunity, we have a right to expect that they will present all the points, and all the reasons in support of them, which they intend to present in the case. Any other rule would encourage inattention to cases by counsel, and much delay and unnecessary waste of time by the court. We are led to these observations by the fact that in this case new points, authorities, and arguments are presented now, of which we should have had the benefit in the first consideration of the case. This case is only one of those in which the evils of this practice have become apparent. Besides the petition, which itself should state the reasons for a rehearing (see rule 24 of this court), there have been filed three suc-

cessive briefs in support thereof, each stating grounds, and authorities, and arguments not supposed to be in its predecessor or predecessors.

In the petition, it is urged, first, that there was no evidence to prove that Kiser was careless, negligent, and unfit for the discharge of the duties of his position as conductor; second, that the presence of Humphrey, the master of transportation, and his knowledge of the occurrence which then took place was no notice to the company; third, that if Humphrey did represent the company, it 'was shown that he employed Kiser as conductor of the train in question, and it was not shown that he was not a suitable and prudent person to discharge the duties of master of transportation, nor that he did not, in the employment of Kiser, use due care and diligence. We will briefly consider these points.

It being evident that the case was made to turn on the allegations of the first paragraph of the complaint, and the evidence in support of it, it seems to us that whether the evidence was sufficient or not depends upon the question whether or not it established or authorized the jury to infer the truth of the following propositions:

First.    That Kiser and Cummings, the conductor and brakeman, were "careless, imprudent, unskilful, and untrustworthy persons," as stated in the complaint.

Second.    That this was known to the railroad company, or by the exercise of reasonable and proper diligence might have been known to the company, as alleged.

Third.    That the injury to the plaintiff resulted from the carelessness, imprudence, unskilfulness, or untrustworthiness of the said Kiser and Cummings, or one of them, as stated in the complaint.

It is with reference to the evidence in support of the first of these propositions that counsel for the appellant mainly insist there was error committed by the court below, and in the judgment of this court. Their position is, that this proposition cannot be established by the proof of particular acts of carelessness, imprudence, unskilfulness, or untrust-

The Pittsburgh, Ft. Wayne, and Chicago Railway Company v. Ruby.

worthiness on the part of the agent or servant of the company. They insist that the question is one of character,. and that, consequently, it must be settled by such evidence as is admitted to prove character and no other. They do not contend that evidence of general reputation is admissible, but that evidence of character, in its proper sense, is admissible, and that alone admissible, in proof of the fact. The books of reports are wonderfully barren of authorities upon this exact point.

In this case there were three separate and distinct acts. or instances of alleged want of care, prudence, skilfulness, or trustworthiness on the part of Kiser before the jury from which to infer that he was not careful, prudent, etc.; for we suppose that in support of this first proposition of fact in the case it was competent for the jury to consider his acts at the time when the plaintiff was injured as well as on the other two occurrences referred to in the evidence.

We were of the opinion, in the former consideration of the case, and we are still of the opinion, that these acts of the conductor were properly left to the jury for their consideration, with the other evidence, in determining this part of the case. In a further search for cases upon this point, we have noted *Gahagan* v. *Boston and Lowell Railroad Company*, 1 Allen, 187. The question related to negligence, etc., of a flagman, and the evidence was offered by the company. The court say: "This was a fact which could be proved by witnesses who had seen his conduct, and could testify to the facts which they had observed. It did not require that they should be experts."

In *Murphy* v. *Pollock*, 15 Ir. Com. Law, 224, the judges were equally divided in opinion, whether the jury might or might not infer the fact of the incompetency of the agent or servant from the single occurrence upon which the action was based. It was alleged in that case that the master had neglected to employ competent persons to manage the engine, the boiler of which had exploded and injured the

plaintiff. The Chief Justice and DEASY, B., were of opinion that they might do so, while FITZGERALD and HUGHES, BB., were of a contrary opinion. They all agreed, however, that evidence of specific acts was admissible. We also refer to *Gilman* v. *Eastern Railroad Co.*, 13 Allen, 433. In support of the second proposition of fact, it was neces≟ sary for the plaintiff to show that the company had notice of the incompetency of Kiser, or that they might have acquired such knowledge by the use of reasonable diligence. This evidence must, we think, relate to a time prior to that at which the plaintiff received the injury. That which had not yet happened could be no notice to any one. It is shown that the master of transportation, whose duty it seems to be to hire and discharge conductors and others managing freight trains, and to regulate the running of such trains, etc., was present on one occasion referred to in the evidence. But counsel for the company insist that notice to him was not notice to the company. We could not come to this conclusion so readily. We think that notice to an agent of a corporation, relating to any matter of which he has the management and control, is notice to the corporation, and we do not see any reason why this rule is not applicable here. *Danville Bridge Co.* v. *Pomroy*, 15 Pa. St. 151; *The Mechanics' Bank* v. *Schaumburg*, 38 Mo. 228. As it was the duty of the master of transportation to communicate all matters concerning his agency to his principal, it may be presumed that he did so. But whether he did so or not, notice to him is notice to his principal, when it relates, as it did here, to the business which he was transacting for the company. He was placed in his position that he might make himself acquainted with the conduct of those who were placed under his direction and control, and he seems to have had the power to appoint and remove, promote and degrade, those who were engaged in the business of which he had the oversight. All that we have decided in this case, on this point, is that the fact that the master of transportation was present on one occasion when Kiser is alleged to have been

guilty of negligence, was competent evidence to go to the jury, and from which, and the other circumstances, the jury might find that the company had notice of the carelessness of Kiser, or with the use of proper diligence might have had such notice. Upon the other proposition of fact, that is, that the plaintiff was injured by the negligence of Kiser, there is no question made.

The petition is overruled.

WORDEN, C. J., having been of counsel, was absent.

*R. Brackenridge, J. Brackenridge,* and *R. S. Taylor,* for appellant.

*J. L. Worden, J. Morris,* and *J. Colerick,* for appellee.