LEWIS *v.* EMERY.

108   641<br>153  2 72

1. MASTER AND SERVANT—COMPETENCY OF EMPLOYÉ—DUTY OF MASTER.

A master does not insure the competency of his servants, but contracts to use all ordinary care in their selection and retention.

2. SAME—EVIDENCE.

Where, in a personal injury case, one of the questions involved is the competency of an employé of the defendant, who was acting as head sawyer in defendant's sawmill at the time of the accident, to fill that position, it is competent for defendant's foreman and regular head sawyer, with whom said employé had worked, to testify whether or not he was a competent head sawyer.

Error to Iosco; Simpson, J.    Submitted January 29, 1896.    Decided March 24, 1896.

Case by Grant Lewis against Temple Emery for personal injuries.    From a judgment for plaintiff, defendant brings error.    Reversed.

*Henry & Pugh*, for appellant.

*W. E. Depew*, for appellee.

MONTGOMERY, J.    The plaintiff was employed in defendant's sawmill as tail sawyer.    He received an injury

by reason of the carriage getting beyond the control of the head sawyer, one Fred Harrington. The questions open for litigation on the record were whether Harrington was, at the time, a competent sawyer, and, if not, whether the defendant had used due care in employing him in that capacity, or in putting him to that work. It appears that, at this time, Harrington had never been steadily employed as head sawyer; that his usual employment was that of setter; that, from time to time, on the occasion of the absence of the head sawyer, he had acted in that capacity; and that, at the time in question, the head sawyer had been absent on account of sickness for some eight days, and Harrington had taken his place. The defendant and his foreman, who testified that he was authorized to employ the men and judge of their competency, and who set Harrington to work as head sawyer, knew, in a general way, of his qualifications, and that his usual work was that of a setter. The jury found a verdict for the plaintiff, and defendant brings error. The record contains numerous assignments of error, but we pass over those which are not likely to arise on a new trial.

1. Defendant called, as witnesses, the foreman of the mill and the head sawyer, with whom Harrington had worked, and asked them to state whether Harrington was a competent head sawyer. This testimony was objected to and excluded. We think this was error. While the opinions of these witnesses would not be conclusive upon the jury, and the jury might find, from the want of experience of Harrington, and the nature of the injury, that he was incompetent, yet the opinions of those who had seen him engaged in this employment, and who were familiar with the requirements of the place, were competent to be received and weighed by the jury. While we are cited to no case in Michigan directly in point, we find that such testimony has been received in other jurisdictions. In *Houston & T. C. R. Co.* v. *Patton*, (Tex.)

9 S. W. 175, it is deemed competent to inquire of a witness, having a knowledge of the subject, whether an engineer was competent. In *Gahagan* v. *Railroad Co.*, 1 Allen, 187 (79 Am. Dec. 724), defendant's witnesses were permitted to testify that certain servants were careful, temperate, and attentive. In *Laros* v. *Com.*, 84 Pa. St. 200, a witness, who was a physician, was permitted to testify that another witness, also a physician, sworn in the case, was competent, and qualified to make a certain analysis. The court said:

"It was not a question of mere reputation, but of Dr. Green's own knowledge, acquired from full opportunity of observation. If I have seen a workman doing his work frequently, and know his skill myself, surely, if I am myself a judge of such work, I can testify to his skill."

The two witnesses whose testimony was excluded in the present case stood in precisely the same relation to Harrington. Each was familiar with the requirements of the position of sawyer. Each had seen Harrington at his work for some time, and we think it competent for them to testify whether he was skilled in this work or not. The fact that he had not been long employed at that work, and that their opportunities for observation were not as great as though he had been in the service for a longer time, only goes to the weight of the testimony. It appears that the ordinary apprenticeship of a head sawyer is that of a setter. The promotion is from that of tail sawyer to setter, and from setter to head sawyer; and, as before stated, the setter acts as head sawyer, if competent, in the absence of the head sawyer.

2. The court, in charging the jury, left the rule in some obscurity. In the charge, the court said: "The law imposes upon every man that runs a sawmill the duty to employ and use reasonably safe appliances, and to employ reasonably skillful and competent employés,"—and in other parts of his charge used language which might be interpreted by the jury as laying down the rule

that, if the defendant employed an incompetent servant, he would be liable to all others employed, even though he used due care in selecting the defaulting servant. In other parts of his charge, on request of defendant, he instructed the jury that, in order to find a verdict for the plaintiff, it must be found, not only that Harrington was incompetent, but that defendant or his foreman knew of Harrington's incompetency, or by reasonable inquiry could have ascertained the fact that Harrington was incompetent. It is improbable that the court intended, in the main charge, to lay down any different rule, and we should hesitate to believe that the jury could have been misled by the instructions, but we refer to the subject in view of a new trial. The rule is that the master does not insure the competency of his servants, but he contracts to use all ordinary care in their selection and retention. 7 Am. & Eng. Enc. Law, 845; *Hilts* v. *Railway Co.*, 55 Mich. 437; *Davis* v. *Railroad Co.*, 20 Mich. 105.

The other questions discussed are not likely to arise on a new trial.

Judgment reversed, and a new trial ordered.

The other Justices concurred.