McBROOM *v.* B. SIEGEL CO.

1. MASTER AND SERVANT—SAFE PLACE—FELLOW-SERVANT—PERSONAL INJURIES—NEGLIGENCE.

The falling of an electric fan from the top of a show case which one of plaintiff's fellow-servants was engaged in moving, was not such evidence of negligence as would charge the master with liability for injuries sustained by plaintiff, the place being safe except for the act of the fellow-servant.

2. SAME—CONCURRING NEGLIGENCE.

It could not be said that the negligence of the master and a fellow-servant concurred to cause the falling of the fan, which had stood on a show case for several months without falling, although the case had been moved several times; negligence could not be inferred from failure to fasten the fan to the show case which appeared to have been stable and capable of sustaining the load.

Error to Wayne; Mandell, J. Submitted June 7, 1912. (Docket No. 39.) Decided May 28, 1913.

Case by Julia McBroom against the B. Siegel Company for personal injuries. Judgment for defendant on a directed verdict. Plaintiff brings error. Affirmed.

*George F. & Peter J. Monaghan*, for appellant.

*Fred L. Vandeveer* and *James D. Clare*, for appellee.

BIRD, J. The plaintiff, Julia McBroom, was in the employ of defendant as a saleslady in charge of the fur department on the third floor of its retail store in the city of Detroit. On the morning of February 24, 1908, while she was in a stooping position combing out some furs, an electric fan, weighing between 40 and 50 pounds, fell from a tall showcase and struck her on the neck near the collar line, severely injuring her. Compensation for the injury was demanded from the defendant on the theory that it had failed and neglected to furnish plaintiff a safe place in which to work. After plaintiff's case had been presented to the jury, the trial court was of the opinion that the negligence which caused the injury was chargeable to a fellow-servant and not to the defendant, and therefore a verdict was directed for the defendant.

The electric fan was not in use at the time of the accident, but was sitting on one corner of a showcase where it had been placed by Mr. Siegel during the previous summer for the comfort of the employees. The showcase was constructed of mahogany and glass and was 9 feet high, 8 feet long, and 2½ feet wide and sat with its back close to east front windows. On the morning in question, the janitor was preparing to wash the windows, and while Mr. Freed, the floor manager, was attempting to move the case away from the window so the janitor could reach it, the fan was jarred off and fell. It appeared that during the summer months the windows were washed once a month, in the cold weather "once in a while"; but whenever it occurred the showcase had to be and was

moved. It also appeared that it was the duty of Mr. Freed to move or to assist in moving the furniture.

The particular manner in which defendant failed to make the place safe is stated in the declaration to be: (1) In failing to properly and safely fasten the fan upon the stand; (2) in failing to provide a safe and suitable base for the stand; (3) in permitting the fan to remain in an unsafe place. It is argued that the failure of the defendant in these respects was the proximate cause of the injury and that under the proofs the question as to the safety of the place was one for the jury and not for the court.

The facts of this case, as disclosed by the record, are such that in my opinion the doctrine of safe place cannot be successfully invoked. It is true, as plaintiff insists, that it is the duty of the master to provide a safe place for his servants in which to work, and it is also true that he cannot delegate this duty to another in such a way as to relieve himself from liability; but, when the master has discharged this duty by making the place safe and it is subsequently rendered unsafe by the negligent act of a servant in carrying on the work in the place, the master is relieved of liability. This rule has been stated as follows:

"The duty devolving upon the master to furnish his servants a safe place to work in the first instance is one which cannot be delegated so as to relieve the master from liability, on the ground that the negligence was the act of a fellow-servant. So the master cannot escape liability by relying on the fellow-servant rule where the place of work afterward becomes unsafe and he knew or ought to have known of its unsafe condition, and failed to remedy it within a reasonable time, where a servant is injured by reason thereof. This rule does not extend, however, to negligent acts of a servant making a safe place unsafe, nor where the negligence relates to details of arrangement and execution in keeping a place safe." 26 Cyc. p. 1321.

Mr. Justice Parsons, in discussing this rule, in the case of *McLaine* v. *Head & Dowst Co.*, 71 N. H. 294 (52 Atl. 545, 58 L. R. A. 462, 93 Am. St. Rep. 522), observed that:

"When the danger arises not from the place itself, but from the use of it for the work, and no special skill or experience beyond that involved in doing the work is required to maintain the safety of the place, the maintenance of such safety is the duty of the servant because it is a part of the work. The plaintiff cannot recover on the ground of the breach of the master's obligation as to the place, because there is no evidence of negligence of the master in that respect."

If we apply the rule to the facts in this case, it becomes apparent that the place in which plaintiff was assigned to work was made safe by the master and that the act which made it temporarily and for the moment unsafe was the act of Mr. Freed, a fellow-servant, in tugging away at the case without giving the fan any thought or attention.

But it is argued by counsel that the injury was the result of the concurring negligence of both master and fellow-servant. It is not unusual to set electric fans in some elevated position as was done in this case and to occasionally change their location in the room. It appeared that the showcase was substantially built and was amply able to carry the load, and while it appeared that the top of it was somewhat irregular and the floor somewhat uneven, it was not shown that the case rocked or was unsteady, nor was it shown that these conditions contributed to its fall. The fan had sat in that position for several months without falling notwithstanding the case had been moved several times. This would indicate that it was secure enough in that position when attention was given to it. The following testimony of Mr. Freed shows what made it fall:

"While jerking and shoving the case as I have described, the fan fell off." "In moving the case the jar of moving the case knocked the fan off the case."

We are of the opinion that the fault was Mr. Freed's and that there was no testimony from which a jury could have concluded that it was due to the negligence of the defendant.

The judgment is affirmed.

STEERE, C. J., and MOORE, McALVAY, BROOKE, STONE, and OSTRANDER, JJ., concurred.