## SALO v. MARTIN.

1. MASTER AND SERVANT—SAFE PLACE—RAILROADS—NEGLIGENCE.

In an action for injuries resulting in the death of plaintiff's decedent, caused by a collision between a "dinky" engine and a car he was moving on defendant's track, the claim of plaintiff that defendant neglected to furnish a reasonably safe place in which to work is not sustained, where the evidence shows that the danger arose by reason of the operation of the train.

2. SAME—FELLOW SERVANTS.

Where defendant was engaged in operating a stone crusher, and in connection with it maintained railway tracks and operated a "dinky" engine, decedent, who was employed to load cars, was a fellow servant of the engineer.

3. SAME—WARNING AND INSTRUCTING SERVANT.

Where decedent had been instructed "that he must look out for himself when the train was coming," defendant was not negligent, the situation not being such that decedent was entitled to special warning.

4. EVIDENCE — MASTER AND SERVANT — INCOMPETENT SERVANT — TRIAL.

In an action for injuries resulting in the death of plaintiff's decedent, caused by a collision between a "dinky" engine and a car he was moving on defendant's track, where plaintiff alleged negligence in the employment of an incompetent engineer, it was error for the court to exclude evidence of specific acts of incompetency.

Error to Chippewa; Fead, J. Submitted November 16, 1914. (Docket No. 38.) Decided September 28, 1915.

Case by Jacob Salo, administrator of the estate of Toivo Kaupinnen, deceased, against Samuel B. Martin for injuries resulting in the death of plaintiff's decedent. Judgment for defendant on a directed verdict. Plaintiff brings error. Reversed.

*Albert E. Sharpe,* for appellant.

*Warner & Sullivan,* for appellee.

BIRD, J.   Defendant in 1910 operated a stone crusher in Chippewa county.   In connection with it there were maintained railway tracks which were connected with the "Soo" Railway.   A "Soo" line freight train came once a day to set in empty cars and take out loaded ones.   At other times a "dinky" engine owned and operated by defendant did the switching.   It was the practice in setting in empty cars to run them beyond the crusher and then pinch them down to the crusher one by one as they were needed.   While decedent was engaged in pinching down a car, the "dinky" engine pushed some other cars against the opposite end of it with such force that the car started backwards, and threw decedent upon the track, and the wheels passed over him and severed one of his legs.

The negligence counted upon for a recovery was:

(1) The failure of defendant to furnish decedent with a reasonably safe place in which to work.

(2) The employment and retention of an incompetent engineer.

At the conclusion of the proofs, the trial court directed a verdict for defendant, upon both grounds. Plaintiff claims that the trial court was in error in so doing.

1. The position of the trial court was that the engineer of the "dinky" and the decedent were fellow-servants, and that decedent, in accepting the work, assumed the risk.   We find nothing in the testimony which shows that the place itself was unsafe.   It was as safe as any place of like character could be where such operations are carried on.   The place was not unsafe by reason of the failure of defendant to make it so in the first instance, but it became unsafe by reason of the operation of the business.   The injury was not

the result of any defect in the track, cars, or surroundings, but was due to the carelessness of the engineer in backing the train against the car at the rate of 8 miles per hour. This was operation. It is true that the defendant could not delegate the duty of making and keeping the place safe to another in such a way as to relieve himself from liability; but the operation of the business he may intrust to others, so as to relieve himself of liability for the negligent acts of his servants. The trial court was in no error in holding that the decedent and the engineer were fellow servants. 26 Cyc. p. 1321. *McLaine* v. *Head & Dowst Co.*, 71 N. H. 294 (52 Atl. 545, 58 L. R. A. 462, 93 Am. St. Rep. 522); *McBroom* v. *B. Siegel Co.*, 175 Mich. 186 (141 N. W. 551).

The further point is made in this connection that the decedent should have been warned that switching was to be done upon that track. From the record it appears that the decedent was advised in the morning of the day of his injury, "to load the rock, whatever there was to load, and then let the balance of the cars down, that they would bring the cars up again just a little before the freight engine came in; that generally was between 4 and 5 o'clock." The claimed inference from this is that the cars would not be moved until just before the freight engine came in. But it appears also that, at the time decedent accepted the service, he was instructed how to do the work, and "that he must look out for himself when the train was coming; that if the whistle blew or the bell rang he had to look out for himself." The situation does not appear to have been such that he was entitled to any special warning with reference to the movement of the switch engine.

2. Two employees at the crusher were produced by plaintiff, and testified that the engineer's general reputation among the employees was that "he was not fit to run an engine." No direct proof of his incompe-

tency was admitted. The trial court held that evidence of reputation was available only on the question of notice to the defendant, but was not available upon the fact of incompetency. There was proof that the engineer was competent. As the proofs then stood, we think the trial court was right in directing a verdict upon this ground; but we think it was error to reject the proffered testimony of specific acts of incompetency which were offered by the plaintiff and rejected. The plaintiff offered to show specific instances of the engineer's incompetency in running the engine. If it were competent to show that the engineer was incompetent, as it was, it could only be done in two ways: By the opinion of others who were qualified to testify, and by showing specific instances of his incompetency. It was held in *Lewis* v. *Emery*, 108 Mich. 641 (66 N. W. 569), that the former method of establishing incompetency was proper, and the latter method is supported by the holding in *Vicksburg, etc., R. Co.* v. *Patton*, 31 Miss. 156 (66 Am. Dec. 552), where the competency of the engineer was questioned. It was there said:

"Upon a question involving his character and fitness for his trust, and the consequent responsibility of the company for his delinquency in these respects, it is not only competent, but necessary, to inquire into his previous habits and conduct, in order to show that the alleged misconduct at the time of the injury was in keeping with his general character. Frequently it may be out of the power of the party to show positively the reasons of the particular delinquency of such an agent; and in such cases it is proper and necessary to show his general character in order to explain his conduct at the time."

The cases of *Pittsburgh, etc., R. Co.* v. *Ruby*, 38 Ind. 294 (10 Am. Rep. 111), and *City of Delphi* v. *Lowery*, 74 Ind. 520, 525 (39 Am. Rep. 98), are authorities

sustaining the admission of evidence of specific acts
of carelessness, unskillfulness, and incompetency.

We are of the opinion that the rejected testimony
was competent. When all the testimony is in upon
that question, it is the duty of the trial court to deter-
mine whether it is sufficient in quality and quantity
to raise an issue for the jury. For the failure of the
trial court to receive this testimony, the case must be
reversed, and a new trial ordered.

BROOKE, C. J., and KUHN, STONE, OSTRANDER,
MOORE, and STEERE, JJ., concurred.

The late Justice MCALVAY took no part in this de-
cision.