ORDER OF UNITED COMMERCIAL TRAVELERS OF AMERICA v. ROTH.

(Court of Civil Appeals of Texas. Ft. Worth. May 10, 1913. On Motion for Additional Findings of Facts, June 7, 1913.)

1. APPEAL AND ERROR (§ 743*)—ASSIGNMENTS OF ERROR—MOTION FOR NEW TRIAL—REFERENCE.

Under Rev. Civ. St. 1911, art. 1612, amended by Acts 33d Leg. c. 136, providing that a motion for a new trial, when one is filed, shall constitute in itself an assignment of error, where a motion for new trial was filed containing a distinct specification that the court erred in refusing to give a peremptory instruction in defendant's favor, it was immaterial that an assignment, alleging the same error, did not refer to the portion of the motion for new trial in which the error attempted to be raised was complained of, as required by Court of Civil Appeals Rule 25 (142 S. W. xii).

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2999, 3011; Dec. Dig. § 743.*]

2. INSURANCE (§ 825*)—ACCIDENT POLICY—CAUSE OF DEATH—EXTERNAL, VIOLENT, OR ACCIDENTAL MEANS.

In an action on an accident policy for the death of insured, caused by paralysis resulting from a blood clot on the brain, evidence held to require submission to the jury of the question whether such condition resulted from an accidental fall, and whether the death was therefore caused by external, violent, or accidental means within the policy, or was the result of prior disease.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 2009; Dec. Dig. § 825.*]

3. EVIDENCE (§ 123*)—DECLARATION OF PERSONS SINCE DECEASED—RES GESTÆ.

In an action on an accident policy for the alleged death of insured, injured as the result of a fall on the ice of a skating pond, evidence that deceased, while returning from the pond, in response to an inquiry whether his fall had hurt him, answered: "No; not seriously; hurt my head and made it ache"—and at the same time raised his hand near or to his head, which declaration followed within a very few moments after the fall, was admissible, when properly qualified as res gestæ.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 351–368; Dec. Dig. § 123.*]

4. EVIDENCE (§ 553*) — HYPOTHETICAL QUESTIONS—ASSUMED FACTS.

Counsel may embody in their hypothetical questions facts which, in their judgment, the evidence proves, and are not compelled to embrace therein facts which the opposing litigant contends have been established.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2369–2374; Dec. Dig. § 553.*]

5. TRIAL (§ 260*)—REQUESTED CHARGE—INSTRUCTIONS GIVEN.

Refusal of requested charge is not error, where the instructions given fully and fairly present the case.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

On Motion for Additional Finding of Facts.

6. APPEAL AND ERROR (§ 1122*)—INTERMEDIATE APPELLATE COURT—FACTS—FINDINGS.

It is not the duty of the Court of Civil Appeals, on a motion for additional findings of fact, to find facts that are undisputed, or recite evidence which may conflict with findings made.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4420; Dec. Dig. § 1122.*]

Appeal from District Court, Tarrant County; W. T. Simmons, Judge.

Action by Mrs. Jennie Roth against the Order of United Commercial Travelers of America. Judgment for plaintiff, and defendant appeals. Affirmed.

Orrick & Terrell, of Ft. Worth, for appellant. Capps, Cantey, Hanger & Short and David B. Trammell, all of Ft. Worth, for appellee.

CONNER, C. J. On the 31st day of July, A. D. 1895, the Order of United Commercial Travelers of America, a fraternal organization, issued to Wm. Henry Roth its certificate of membership whereby the said Roth became a member in good standing, and whereby his beneficiary became entitled to receive, in event he should suffer, "during the continuance of his membership and while in good standing, bodily injury effected through external, violent, and accidental means, which alone should occasion death immediately or within six months from the happening thereof, a sum not exceeding $5,000, and the further sum of $1,300, the latter sum payable in weekly installments of $25 each, the constitution of the order providing 'that payments authorized under the provisions' of section 6 of said constitution 'shall not cover or extend to any death, disability or loss * * * happening directly or indirectly in consequence of disease, or caused wholly or in part by bodily infirmities or disease * * * or by any surgical operation or medical or mechanical treatment * * * or to any case except where the injury is external, accidental, and the proximate and sole cause of the death, disability or loss.'" Roth died March 5, 1905, while a member in good standing, from paralysis caused by a blood clot in the fourth ventricle of his brain. Defendant having denied liability, this suit was instituted by appellee, Mrs. Jennie Roth, as surviving wife and beneficiary of W. H. Roth under his certificate of membership, and it was agreed that Mrs. Roth was entitled to recover, "providing she proves that he died as a result of accident, and in no other event." A trial was had on the 2d day of February, 1912, before the court and a jury. Upon issues

submitted to them, such jury returned a verdict in favor of appellee, and judgment was rendered thereon in her favor, and against said order of United Commercial Travelers of America for the sum of $8,707.-35, with interest at 6 per cent. from date of judgment, from which judgment appellant prosecutes this appeal.

[1] Appellant's first assignment is that "the court erred in that it refused to give special charge No. 1, requested by the defendant." The special charge referred to in the assignment was a peremptory one in appellant's favor. The assignment is objected to by appellee on the ground that it does not refer to that portion of the motion for a new trial in which the error attempted to be raised is complained of, as provided in rule 25 for the Courts of Civil Appeals (142 S. W. xii), but the objection under any construction of the rule seems now unavailing, in view of the amendment of Revised Statutes, article 1612, effective April 4, 1913 (Acts 33d Leg. c. 136), providing, among other things, that the motion for new trial itself, when one is filed, shall constitute the assignments of error. Here a motion for new trial was filed which contains a distinct specification of the error complained of, and which therefore is sufficient under the amendment.

[2] This brings us to a consideration of the assignment, and in the conclusion reached we all agree. Appellant insists in effect that if the evidence is not conclusive against plaintiff's contention that W. H. Roth's death was caused through external, violent, or accidental means, which alone and independent of all other causes brought about his death, it at least does not affirmatively show this fact with reasonable certainty, that the cause of his death at best is conjectural under the evidence, and that therefore, the burden of proof being upon the plaintiff, the peremptory instruction should have been given.

Before reviewing the testimony, it will be well to have in mind the precise manner in which the court submitted the issues. The court gave the following general charge:

"Gentlemen of the jury, if you believe from the evidence that on January 14, 1905, plaintiff's husband, William Roth, accidentally fell upon the ice while skating, and that by reason of such fall his head struck the ice and was thereby injured, and that said injury to his head, if any, alone caused him to die within six months from the date of the happening of said accident, then you will find for the plaintiff in any sum not exceeding $5,000 with interest on the same at the rate of 6 per cent. per annum from July 5, 1905, to the present time, and also the sum of $1,300, with interest on the same from July 5, 1906, to the present time at the rate of 6 per cent. per annum.

"The foregoing instruction is given subject to instructions hereinafter given you, in subsequent portions of this charge. If you do not believe from a preponderance of the evidence that William H. Roth sustained an accidental injury by his fall upon the ice, which alone caused his death within six months from the date of said accident, your verdict will be for the defendant.

"You are further instructed that if you believe from the evidence that the said William H. Roth died directly or indirectly or his death was caused, wholly or in part, in consequence of bodily infirmity or disease, you will find for the defendant.

"You are instructed that the burden is upon the plaintiff to make out her case by preponderance of the evidence, and unless she has done so, it will be your duty to find for the defendant. You are the exclusive judges of the weight of the evidence and the credibility of the witnesses, and of the fact proved, but the law you will receive from the court, as herein given you in the charge, and be governed thereby."

The court also gave at appellant's request the following special instruction:

"You are instructed if from the evidence you cannot say with reasonable certainty whether said W. H. Roth came to his death by reason of his alleged fall, if any, upon the ice, or that his death was caused by natural causes, or wholly or partially as the result of disease or bodily infirmity, then you will find the verdict for the defendant."

The evidence is quite voluminous, and we will not undertake to do more than to briefly give its substance as we find it. As stated in the beginning, Roth was a member of the appellant order in good standing, when on the 15th day of January, 1905, he, together with a friend, repaired to a frozen lake some half mile or more from the town of Henryetta in Oklahoma, for the purpose of skating on the ice. There were a number of others on the lake or pond at the time and W. H. Roth and his friend, C. E. White by name, started off skating across the pond side by side, holding each other's hands, and after skating some little distance their feet became entangled, and both fell; W. H. Roth falling, as one witness testifies, full length on his head and shoulders, with hands outstretched. White recovered himself, and assisted Roth to get up, but whether assistance was necessary does not certainly appear. Roth at the time complained only of an injury to his wrist. The evidence is not entirely certain as to whether the parties continued their skating. Some of the testimony indicates that they did so for something like half an hour. Another witness, however, gave it as his best recollection that White, after assisting Roth to arise, took off his skates, and they immediately left the pond. At all events, shortly after the fall White and Roth returned to Henryetta. On their return they were met by Mr. Sulling,

who testified that White said that Mr. Roth had fallen on the ice, and that he, the witness, then asked Mr. Roth if the fall had ˙hurt him. "He answered: 'No; not seriously; hurt my head and made it ache'— and at the same time he raised his hand near and to his head." Mrs. H. C. Embrey, with whom Mr. Roth was boarding at the time, testified that prior to January 15th Mr. Roth was of a cheerful disposition and in good health, but that when he returned for the evening meal after his fall on the ice he had his left wrist bandaged and ate very little dinner, but went to his room uptown; that he was sick on that day; that he was very late coming to his breakfast next morning; that he looked badly next morning, and that she had to assist him with his overcoat; that he boarded with her two weeks after he fell on the ice; that he was not so talkative as he had been; that he complained each day while he was with her, and said he was feeling badly; said his head was hurting him. John Bastible testified that on the Wednesday evening following the Sunday evening that Mr. Roth fell on the ice his manner and actions differed so much from the usual that it was noticeable; that he was irritable and in bad temper; that as a rule Mr. Roth was cheerful, and a wholesome example of health, but on the occasion last mentioned his conduct and disposition were not the same. R. J. Dickson testified that on January 24, 1905, Mr. Roth came to his store, but that he did not discover on this occasion that he was in ill health, though he complained of pains in his head; that about 10 days later he was seized with a severe and painful attack at the witness' office, which caused him (Roth) to stagger, and was assisted to a chair; that on this occasion he complained with a pain in his head, which caused dizziness and partial loss of the use of one of his arms and one leg; that his face was somewhat drawn to one side, and he was unable to articulate; that this attack lasted about one-half hour; that he remained in his office about two hours, from 8 to 10 in the morning, and then went to the Cotton Oil Company's office, where he solicited the sale of some coal. Randolph Hinner testified: That on one evening in the latter part of February or the first of March, 1905, Roth came to his drug store, and complained of severe headache. That his face was flushed. The witness gave him some medicine, and that Roth then requested that Dr. Sanderson be called to his room. That his face was flushed almost purple, and that the witness hastened his call for Dr. Sanderson. The appellee, Mrs. Jennie Roth, testified that she was not in Henryetta at the time of Mr. Roth's fall, but was on a visit to her parents in Iowa; that she came home in obedience to a telegram; that when she got home, the date of which she was not able to give, but which she thought was in the early part of February, Mr. Roth was confined to his bed, and never got up afterwards; that after her return he improved considerably, and her physician thought he was going to recover, but that he finally got worse; that from early in February to the 5th of March he had paralysis on one entire side, which finally attacked the other side and became complete, when coma and death followed.

An autopsy was held several weeks after Mr. Roth's burial, which was participated in by some six physicians, one of whom was the chief medical director of the appellant order. No evidence of external violence was found on the body at this time, and no diseased or abnormal condition of the body or brain were found, save that the walls of the left ventricle to the heart were very thin; that the walls of the right ventricle were thickened; that the valves guarding the right auricular ventricle opening were sclerotic, or thickened, and that there was a clot of blood found on the fourth ventricle of the brain, which lies at the base of the skull. All of the physicians agreed that this clot of blood was the immediate cause of death, some of them, however, giving it as their opinion that the cerebral apoplexy, causing death, and brought about by the clot of blood, was "not due to external violence or accidental causes." Others, however, declined to concur in this conclusion.

There was further testimony upon which appellant also strongly relies. It was shown by Dr. Saunders, that some 10 or 12 years prior to the fall in question W. H. Roth was afflicted with a serious bodily ailment, the ordinary tendency and effect of which was to cause degeneration of nerve and brain cells, and blood vessels, and which, if uncured, would result in manifestations as shown by Roth after his fall. It was further shown that on the same day, or the day after Roth's fall, he was in his office writing, and apparently attending to his business which was that of a traveling salesman; that within the two weeks following the fall he visited a number of places and towns in the adjoining territory, soliciting business; and a number of physicians testified that apoplexy, caused by hemorrhage of the brain, was of frequent occurrence, sometimes when no assignable cause could be given, particularly in cases where the subject was of Roth's age, 56 years at the time of his death; that some time in February he presented to the state agent of the association a claim for the temporary benefits provided by his certificate, and in which he reported himself as cured.

There was evidence, however, to the effect that the claim for temporary benefits was soon thereafter recalled by Roth, and that the disease of which Dr. Saunders had testified had been entirely cured, leaving no visible effects to which his death could be assigned. For instance, the expert testimony of

some of the physicians was to the effect that at the autopsy the brain had been very carefully examined, and that no evidence of tumors or disease of the brain cells or blood vessel was to be found; that preceding the fall during the period covered by the testimony Roth was of a lively, cheerful disposition, and apparently in the best of health. While the testimony all showed that, had the clot of blood .of the size found in the left ventricle immediately appeared after the fall, paralysis and death would have followed at once, it was a fair inference from other testimony that the hemorrhage proceeded very slowly, and thus caused the advancing steps of Roth's final sickness and accumulation of blood found, and that such hemorrhage could be caused by an accident of the kind shown to have happened to Roth; one physician testifying that he had seen cases of hemorrhages under conditions of normal arteries, or arteries of normal strength, where there was no sign of any injury to the scalp.

We are of the opinion that the evidence raised the issue upon which appellee's right of recovery depended, and that the court properly submitted it to the jury. If we could feel any hesitation in this conclusion, it is fortified by the fact that our Supreme Court, upon substantially the same testimony as was admitted upon the submission of this case, held that a peremptory instruction was properly refused. See Roth v. Travelers' Protective Association of America, 102 Tex. 247, 115 S. W. 31, 132 Am. St. Rep. 871, 20 Ann. Cas. 97. Appellant's first assignment is accordingly overruled.

[3] Appellant further assigns error to the action of the court in admitting, over the objection that it was hearsay, the testimony of the witness Sullings, hereinbefore referred to, to the effect, when he inquired of W. H. Roth during his return from the skating pond whether his fall hurt him, that Roth answered: " 'Oh; not seriously; hurt my head and made it ache'—and at the same time raised his hand near or to his head." This precise testimony was held by our Supreme Court, in the case already cited, to be admissible with the proper qualification, and we would in any view feel impelled to follow this ruling. In addition to this, if the testimony of the witness Hopkins, who it was admitted on the submission had not testified in the trial of the case of Roth v. Travelers' Protective Association of America, is to be credited, Mr. Roth after his fall left the lake immediately, and the answer complained of must therefore have followed within a very few moments after the fall, so as to possibly bring the answer within the rule admitting declarations and exclamations constituting a part of the res gestæ, rendering it difficult for this reason for us to now say that the ruling of the trial court is erroneous. But however this may be, as before stated, the Supreme Court ruled that the answer was admissible when properly qualified, and in the case now under consideration the court indisputably qualified the testimony at the time that it was given, and no complaint whatever has been made by the appellant as to the character of the qualification. The assignment, therefore, raising this question is overruled.

[4] Objection was also made to several hypothetical questions submitted to experts, on the ground, in substance, that the questions fail to embody necessary facts shown by the evidence, but we think these objections are to be overruled. As we understand the rule on the subject, counsel have the right to embody in their questions the facts which in their judgment the evidence proves, and are not compelled to embrace therein the facts that the opposing litigant contends to be those established by the evidence. The principal objection which seems to be urged to the hypothetical questions referred to is that they did not embody the fact of Roth's disease and condition, as testified to by Dr. Saunders; but, as already appears, there was evidence authorizing the conclusion that Roth had been entirely cured of such disease, and we think appellee's counsel had the right to so assume, and to propound hypothetical questions in harmony with such assumption. The second and fifth assignments of error are accordingly overruled.

[5] Error is also assigned to the court's refusal to give several special instructions, but we think the special instruction given at appellant's request, and hereinbefore noted, together with the court's general charge, fully and fairly presented the case.

No other assignment requires consideration save that insisting that the motion for new trial should have been granted, because of the insufficiency of the evidence. The evidence and conclusions hereinbefore set out, however, sufficiently show that we cannot say that the trial court abused his discretion in refusing to do so.

The judgment is affirmed.

## On Motion for Additional Findings of Fact.

[6] Appellant insists upon additional findings of fact which, as set out in the motion therefor, and in so far as material, are either undisputed or mere recitations of evidence which support inferences in conflict with conclusions fairly inferable from other evidence upon which our original findings rest. It is our province to determine whether evidence exists sufficient to support the verdict and judgment, and not to pass upon the weight of conflicting testimony. In other words, it is never necessary, under our rules of practice, to find facts that are undisputed in the record, or recite evidence which may tend to conflict with findings made. Where the facts are undisputed our Supreme Court can, and often does, consider them, and in cases of conflict the material inquiry goes to the evi-

dence, if any, which tends to support the ruling or verdict, and not to that in conflict therewith.

The motion is accordingly overruled.