## UNITED STATES v. CERTAIN BOTTLES OF LEE'S "SAVE THE BABY."

District Court, D. Connecticut. December 14, 1929.

No. 3331.

George H. Cohen, Asst. U. S. Atty., of Hartford, Conn.

Ransom H. Gillett, of Albany, N. Y., for defendant.

THOMAS, District Judge. The United States filed its libel for condemnation against certain bottles and their contents shipped in interstate commerce, and prayed that the same be condemned upon the ground that they were misbranded, within the meaning of the Food and Drugs Act. The libel alleges the transportation as of January 15, 1929.

The bottles were labeled "Save the Baby." On the back of the bottle is a label setting forth the following:

"For croup apply with the hand or by saturating ＊ ＊ ＊ cloth and laying it over the throat and chest; also apply over the nose. In severe cases, where relief does not follow in half an hour, give a half teaspoonful internally every half hour. ＊ ＊ ＊ For Sore throat apply on the throat; also

take one-half a teaspoonful internally. For coughs * * * apply on the chest, also take one teaspoonful morning and night. For ague in breast, apply to the parts affected. * * * "

On the small carton the following legend appears:

"* * * SAVE THE BABY * * * CROUP MIXTURE * * * For Croup, * * * Coughs and Sore Throat * * * used in cases of Grippe, Bronchitis, Laryngitis, Tonsilitis, Pneumonia, etc. * * * "

There is considerably more of the same nature on the labels on the large cartons and on the circulars inclosed.

The libel proceeds to charge that the alleged drugs in question were misbranded, within the meaning of the Food and Drugs Act of June 30, 1906, as amended, section 8, paragraph third (21 USCA § 10), because they contained "no ingredient or combination of ingredients capable of producing the effects claimed," and that the labels were applied in reckless and wanton disregard of their truth and with intent to mislead purchasers.

The claimant appears to be William W. Lee & Co., a partnership doing business in Watervliet, Albany county, N. Y., in the Northern district of New York. There is nothing to indicate who, at the present time, composes the copartnership. Both the answer and notice of claim are silent on this point.

In their answer the claimants, after entering denial as to the alleged misbranding, set up a separate defense, which is contained in paragraph 4 of the answer, to which the motion to strike is addressed, wherein, inter alia, the claimant alleges:

"That on February 24, 1916, the United States attorney for the Northern district of New York laid an information against this claimant, William W. Lee & Co., and the several copartners thereof, pursuant to the Food and Drugs Act, accusing them individually and as such copartnership of unlawfully shipping and delivering for shipment in interstate commerce articles of drugs identical in kind, nature and composition with the articles of drugs which are the subject of the present libel, which articles then bore labels, wrappers and reading matter substantially identical with the labels, wrappers and reading matter present in the articles seized under this libel; and that said information charged the claimant of violating the identical statute involved in this proceeding in the same particulars as charged in this libel and that thereafter the information was duly dismissed on the merits and an order to that effect entered on or about November 13, 1916, all of which is exhibited in a copy of the information and order annexed to the answer."

The answer then proceeds further to allege that on July 26, 1920, an information was laid by the United States attorney for the Northern district of New York, which again charged the claimants with violation of the Food and Drugs Act, in that the claimants shipped, on or about September 17, 1917, articles of drugs identical with those in suit and bearing the identical labels which said articles were claimed to be misbranded, and that on the 16th day of February, 1922, the information was dismissed, or nolle pros'ed, on motion of the United States attorney, as also appears by a copy of the information and order.

The whole of the information of 1916 is not annexed, but merely count 2 thereof, and it discloses that one Charles Samuel Ulcher and Carrie L. Ulcher, trading as William W. Lee & Co., did unlawfully ship and deliver from New York to Boston certain packages labeled substantially similar to the labels on the packages at bar, and it was charged that those labels constituted a misbranding. The order of the District Court of October 27, 1916, discloses that the defendants then pleaded guilty to the first count of the information (though what that first count was we cannot tell), and were fined on their plea of guilty $25. The order dismissed the second count.

There is nothing from the nature of the order to indicate just what the reason was for the dismissal. There is no recital that the issues were tried, nor is there anything to indicate whether the dismissal was because of insufficiency in the information or what. I think that a fair interpretation of the order would indicate the second count was dismissed on consent of the United States attorney. Otherwise the dismissal would appear to have been founded on nothing whatsoever. The second information was also against the same defendants, and charged a shipment of misbranded articles of the same kind as those involved in the first information, and charged the misbranding thereof in the same way. The order which was entered thereon in February, 1922, recited the charge involved in the information at length, and that the defendants had entered a plea of former jeopardy, and thereupon and on motion of the United States attorney the second information was dismissed.

In the case at bar the government moves to strike out the matter embodied in the separate defense upon the ground that:

"(A) The allegations and matters contained in said paragraph 4 and said annexes do not constitute a valid defense to any matters charged in the libel; and (B) the allegations and matters contained in said paragraph 4 and said annexes are incompetent, immaterial, irrelevant, and have no bearing whatever on the issues in this case."

The matters set up as a separate defense can be available only on one theory, and that is that, as to the libel at bar, they are res judicata. It is contended by the claimant that the dismissal of the two former informations against them involved an adjudication to the effect that articles so constituted and so labeled, as in the case at bar, are not misbranded, and that such an adjudication is binding forever after.

The doctrine of res judicata is, like many other legal principles, simple enough in its statement, but difficult, at times, in its application. A former judgment on the merits concludes the parties and their privies as to all matters which were litigated, or which should or could have been litigated, within the field of the specific controversy. Therefore, in any action between the same parties upon the identical claim or demand upon which a judgment has already been rendered, that judgment is conclusive. Where the action between the same parties is upon a different claim, the former judgment may, nevertheless, operate as an estoppel as to any matter litigated between the parties or actually determined therein.

It is to be noted, then, that a former judgment is conclusive only as to the parties. It binds no one but the parties, or those who derive their interest in the subject-matter from the parties. There is nothing in this record which indicates who the claimants are, other than that they are persons operating under a partnership name. Whether there are 2 persons or 20 persons, and whether they are the identical persons who operated under the same partnership name in 1916 and 1920, does not appear. While it is true that the United States attorney has raised no question on this point, the court, nevertheless, in its decision on the sufficiency of the answer set forth by defendants, is not restricted to a consideration only of the points made in the brief filed by counsel.

Assuming, however, the identity of the parties, I find no identity of subject-matter.

In fact, there is no claim that there is an identity of subject-matter, except that the claimants allege that the articles charged to be misbranded have the same composition and bear the same labels as the articles charged to have been misbranded in the criminal actions. It is not claimed, however, that the *identical* articles involved in the criminal proceedings had more than 10 years ago are the subject of the seizure in New Haven in 1929. At best, they are only similar. They are not the same. It follows, then, that the claim of res judicata must rest upon the theory that the dismissals of the two informations involved the determination that articles of the substance of the articles at bar, labeled in the same way, are not knowingly misbranded, or their transportation in interstate traffic is not made with knowledge that they are misbranded. This brings us to the crux of the matter.

I have been referred to only one type of case where a judgment in a criminal action may, in any sense, be said to be determinative of an issue in a civil action. That is the type of case involved in Coffey v. United States, 116 U. S. 436, 6 S. Ct. 437, 29 L. Ed. 684. Coffey had been prosecuted on a charge of having manufactured distilled spirits without paying the tax imposed by law. He was acquitted of that charge, and then an information in rem was filed against certain property alleged to have been used by Coffey in the manufacture of the distilled spirits. In his answer in the latter proceedings, Coffey pleaded in bar to the maintenance of the forfeiture proceedings the judgment of acquittal in the criminal case, and it was held by the Supreme Court of the United States that the plea was good. On page 443 of 116 U. S., 6 S. Ct. 437, 440, 29 L. Ed. 684, Mr. Justice Blatchford, speaking for the court, said:

"Yet where an issue raised, as to the existence of the act or fact denounced, has been tried in a criminal proceeding instituted by the United States, and a judgment of acquittal has been rendered in favor of a particular person, that judgment is conclusive in favor of such person on the subsequent trial of a suit in rem by the United States, where, as against him, the existence of the same act or fact is the matter in issue as a cause for the forfeiture of the property prosecuted in such suit in rem. * * * There could be no new trial of the criminal prosecution after the acquittal in it; and a subsequent trial of the civil suit amounts to substantially the same thing, with a difference only in the consequences following a judgment adverse to the claimant."

140

It will be noted that in the Coffey Case the information in rem involved a claim to the forfeiture of the *identical* articles that were the basis for the criminal prosecution. We have no such situation in the case at bar. It must be further noted that in the Coffey Case there had been a trial on the merits and an acquittal, which facts also are not present in the case under consideration. Later on the Supreme Court had occasion to construe *its own* decision in the Coffey Case in the case of Stone v. United States, 167 U. S. 178, 184, 17 S. Ct. 778, 781, 42 L. Ed. 127, and Mr. Justice Harlan, speaking for the court, said:

"But this court held that, as the demurrer to the answer admitted that the fraudulent acts and attempts to defraud alleged in the criminal information, and covered by the verdict and judgment in the criminal case, embraced all the acts, attempts, and intents averred in the libel for the forfeiture of Coffey's personal property, the judgment of acquittal in the criminal case was a bar to the proceeding by libel."

It must be obvious that the Coffey Case did not determine that an acquittal establishes immunity against prosecution for subsequent conduct or misconduct upon a similar charge; no judgment can do that. The Coffey Case held, merely, that just as the government would be estopped by a plea of former jeopardy from again prosecuting the defendants for the identical acts charged in the first indictment, so it would be estopped from bringing a proceeding in rem upon such identical facts. And it seems clear enough that a plea of former jeopardy could hardly be sustained against an indictment charging the commission of acts occurring after the first indictment had been dismissed. And if an acquittal could not be pleaded in bar to such an indictment, on what theory can such acquittal be said to be res judicata on such an information in rem?

I think that the essential fallacy of the claimants' position lies in the obvious confounding of two wholly distinct conceptions, namely, that of res judicata and that of stare decisis. Res judicata constitutes a plea in bar, founded upon a specific judgment determinative of a specific controversy. Stare decisis is not a plea at all. It is the rule of precedent. A person who has been indicted for buying intoxicating liquor may be acquitted, upon the ground that *buying* liquor is no crime. If he be again indicted for buying the same liquor, he may plead in bar the former acquittal. This would be a plea of former jeopardy and in its civil aspect it is called res judicata. But, if he be indicted for buying *other* liquor, he cannot plead former jeopardy; but he may demur to the indictment, upon the ground that it fails to charge a crime, and then, proceeding upon an application of the doctrine of stare decisis, he may urge the former judgment of acquittal as a precedent to guide the court in the disposition of his demurrer. And it may well be that the second court, even though it be a court of co-ordinate jurisdiction, may disagree with the first and not permit the precedent to rule it. Had, however, the plea of res judicata been available, then the court, whether of co-ordinate or of higher jurisdiction, would be compelled to give effect to it.

These considerations apply with peculiar force to the case at bar. Let us assume that 10 years ago these claimants were tried upon an indictment charging them with the offense of misbranding, and that such charge arose out of conditions similar to those set out in the libel. Let us further assume that they were acquitted after a trial on the merits. The most that could be said of such an acquittal would be that the court, composed of a judge and a jury, determined that the product sold by the claimants was not *then* misbranded within the meaning of the statute. Such a judgment might have value as a precedent, though even in such a case the value would be highly doubtful, as the court could hardly be said to have established a rule of any kind; for it is obvious that, in a criminal case, a plea of not guilty offers a traverse to every material allegation of the indictment, and an acquittal necessarily follows if the government fails in its proof on any one essential element in its case. Thus, in a criminal trial for misbranding, it may be that the government is unable to establish the interstate character of the shipment, or that it was the defendants who did the misbranding, or that the articles were shipped at the time charged in the indictment. An acquittal eventuating upon the failure of proof beyond a reasonable doubt of any one of these necessary elements could hardly be said to adjudge that the labels were not false in fact and fraudulent in purpose. But in the case at bar there was never even any trial and acquittal. At any rate, the record discloses none. The first information was dismissed, for what reason does not appear. If there was a trial, then the judgment is strangely silent concerning the matter. As for the second information, the judgment shows that it was nolle pros'ed by the Unit-

ed States attorney upon the tender of the plea of former jeopardy. It may be that this record exhibits an adjudication on the merits of something, but of what I cannot tell.

It follows, for the reasons herein given, that the motion to strike out the matters alleged in paragraph 4 of the answer and annexes A, B, C, and D should be granted, and an order may be submitted accordingly.