**MATHIS et al. v. STATE.**

No. 4834.

Court of Civil Appeals of Texas. Beaumont.

April 23, 1953.

Rehearing Denied May 20, 1953.

Fisher, Tonahill & Reavley, Jasper, and Robert S. Coe, Kountze, for appellant,

John Ben Shepperd, Atty. Gen., substituted for Price Daniel, former Atty. Gen., R. A. Richardson, Kountze, and Chap B. Cain, Liberty, for appellee.

WALKER, Justice.

This suit was brought by the State to forfeit a quantity of liquor seized by agents of the Texas Liquor Control Board. When the seizure was made the liquor was in a structure called the T. S. Mathis Package Store, and the appellant T. S. Mathis then held a permit to operate a package store at this place. The appellant Evelyn Reeves was present at the time of seizure and immediately prior thereto had sold a bottle of liquor to one of the representatives of the Board and still earlier that day had sold another bottle of liquor to this man. She was in possession of (or had the custody of) the premises and thus, of the liquor at the time; and an agent of the Board made an inventory of the liquor seized as required by Subdivision (b) of Section 30 of the Texas Liquor Control Act, Vernon's Ann.P.C. art. 666–30(b), and delivered a copy of this to Mrs. Reeves. She later delivered this to the appellant Mathis.

The petition makes complaint of the seized liquor as provided by Section 42 of the Liquor Control Act, Vernon's Ann. P.C. art. 666–42, but appellants Mathis and Evelyn Reeves and the husband of the latter, namely, Richard Reeves, were also made parties defendant. Mathis filed a separate suit against two of the agents of the Board for conversion of the liquor, and this suit was consolidated with that brought by the State.

The petition charges three violations of the Liquor Control Act, Vernon's Ann.P.C. art. 666–1 et seq. The permit to operate a package store at the place where the liquor was seized was issued to Mathis alone, and it was alleged of Mathis that he was violating Subdivision (23) of Section 17 of the Liquor Control Act by allowing another person to use his permit. According to this group of allegations, the liquor seized was stored or was possessed and kept in the T. S. Mathis Package Store by some person in violation of the Liquor Control Act within the meaning of Subdivision (4) of Section 3a of the Act, defining "illicit beverage", and these allegations were sufficient, in the absence of exception thereto to admit proof of these facts. It was next alleged of Richard Reeves and Evelyn Reeves that they were violating Subdivision (a) of Section 4 of the Liquor Control

Act by having the liquor in their possession for the purpose of sale without having a permit as required by law. According to this group of allegations, two identified persons had the liquor in their possession in violation of the Act within the meaning of the definition of illicit beverages which we have cited. On the day of seizure Evelyn Reeves made the two sales of liquor to a representative of the Board, as we have stated, and it was alleged of her that she made these sales without a permit so to do. It is not alleged that Evelyn Reeves alone had the liquor there for sale, and the purpose of these allegations and their relevance is not clear. We infer that the allegations were intended for a part of the charge that the liquor was illicit because of the violation charged against Richard Reeves and Evelyn Reeves jointly.

We construe these allegations as presenting more than one ground of forfeiture. Under these allegations it was open to the State either to show that some unidentified person and not T. S. Mathis, the holder of the permit, had the liquor for sale at the T. S. Mathis Package Store; or else, going one step farther, to show that identified persons, namely, Richard Reeves and Evelyn Reeves, had the liquor there for sale. It is also to be borne in mind in considering the points of error that none of the points assign error to any defect in the petition or to any proof as being without support in the petition.

After Mathis's suit for conversion was consolidated with the State's suit for forfeiture, Mathis, Richard Reeves and Evelyn Reeves filed a joint answer. They plead first a general denial and next a special denial that Mathis had violated Subdivision (23) of Section 17 and that the Reeveses had violated Subdivision (a) of Section 4 of the Liquor Control Act. They admitted that Evelyn Reeves had made the sales alleged in the State's petition, but alleged that she did so as Mathis' employee. In the final paragraph of their pleading the three of them adopted the allegations of Mathis's petiton in his suit for conversion, thus alleging, in effect, that the liquor and the business conducted at the T. S. Mathis Package Store belonged to Mathis and not to Richard Reeves and Evelyn Reeves. Mathis's petition is not in the transcript, but he proved it and it is in the statement of facts.

The cause was tried to a jury who made the following findings in response to special issues: (1) The alcoholic beverages seized by the Board's agents were illicit beverages as that term had been defined. Subdivision (4) of Section 3a of the Liquor Control Act was given as a definition of "illicit beverage"; (2) Mrs. Evelyn Reeves did not act as the employee of T. S. Mathis in making sales of said liquor to a certain agent of the Board at the time and place in question; (3) the written statements (Mathis made two, one to an agent of the Federal Government and one to an agent of the Board) introduced in evidence by the State bearing the signature of T. S. Mathis were given by him voluntarily; (4) Mathis's oral statements, made by Mathis to the State and Federal officers on the day of seizure, pertaining to the T. S. Mathis Package Store's operations were made voluntarily; and (5) the written statement signed by T. S. Mathis at the Bluebonnet Cafe (this was the statement made to the Board's agent) was true. Issues 6 and 7, the two issues numbered 8, and the issues numbered IX and X were conditioned on a negative answer to issue 5 and were not answered. (XI) R. W. Reeves owned a part of the alcoholic beverages stored in the T. S. Mathis Package Store on the day of seizure. (XII) T. S. Mathis sustained no actual damages by reason of the seizure of the liquor.

On this verdict the trial court rendered judgment forfeiting the liquor and that Mathis take nothing on his claim for conversion, and further, that the Board recover all costs against the three appellants.

From this judgment, Mathis, Evelyn Reeves and Richard Reeves have appealed.

Appellants' fundamental complaint is of the forfeiture and matters pertaining thereto. Apart from this they do not complain of the denial of relief to Mathis or of the adjudication of costs against all appellants.

(1) The finding under Issue 5 and other facts proved as a matter of law support the

judgment of the trial court and thus Issues 1, 2 and XI are immaterial. This conclusion is based on the following comments:

It was proved as a matter of law that the permit was issued to and was held by Mathis alone at the time the liquor was seized. The permit was issued in 1947 and it had been subsequently renewed by Mathis. It authorized Mathis to conduct a package store on the premises where the liquor was when seized.

It was also proved as a matter of law that the liquor was on the premises for sale by some one. This is established conclusively by the testimony of Mathis and of Evelyn Reeves. Indeed, appellants have not denied that the liquor was there for sale; they only claim that it was for sale by Mathis.

Forfeiture is provided for in Sec. 42 of the Liquor Control Act and the property which may be forfeited is identified by the definition of the term "illicit beverage". This term is defined in Subdivision (4) of Section 3a of the Act as meaning, among other things, "any alcoholic beverage possessed, kept, stored * * * with intent to * * * sell * * * in violation of the provisions of this Act."

If the seized liquor was in the T. S. Mathis Package Store for sale by one except Mathis, the holder of the permit to operate the store, it was necessarily "possessed, kept, stored * * * with intent to * * * sell * * * in violation" of the Act, that is, was necessarily an illicit beverage within the meaning of Subdivision (4) of Section 3a and was subject to forfeiture under Section 42. This is a consequence of the following provisions of the Liquor Control Act. Subdivision (a) of Section 4 of the Act makes it unlawful for anyone to "possess for the purpose of sale * * * store * * * any liquor in any wet area without first having procured a permit of the class required for such privilege." Subdivision (8) of Section 15, among other things, authorizes the holder of a package store permit (that is, Mathis) to sell liquor on or from licensed premises (that is, the T. S. Mathis Package Store) at retail to consumer for off premises consumption only. Subdivision (22) of Section 17 provides that "It shall be unlawful for any person to * * * exercise any privilege granted by a permit except at the place, address, premise, or location for which the permit is granted," with exceptions not material on this appeal. Subdivision (23) of Section 17 provides that "It shall be unlawful for any person to consent to the use of or to allow his permit to be displayed by or used by any person other than the one to whom the permit was issued."

Thus, to perfect the right to forfeit the liquor, it was only necessary for the State to establish the fact that the liquor was in the store for sale by somebody other than Mathis, the permit holder, and this fact was established by the jury's finding under Issue 5.

The jury found in response to Issue 5 that a written statement which Mathis made to an agent of the Board on the day of seizure was true. This statement shows that the liquor did not belong to Mathis, and since the proof showed as a matter of law that the liquor was there for sale, this fact, namely, that Mathis did not own the liquor established the illicit character of the liquor and made the liquor forfeitable. However, the statement also showed that Mathis had no interest in the business conducted at the T. S. Mathis Package Store, and that he had no interest in the permit.

(2) The manner of submission represented by Issue 5 raises the question, whether any effect ought to be given the answer to Issue 5. The statement by Mathis found to be true reads as follows:

"State of Texas

County of Hardin

"Before Me, the undersigned authority, this day personally appeared T. S. Mathis, who is a credible person and who, after being by me duly sworn, did dispose and say:

"My name is T. S. Mathis and I am the holder of Package Store Permit P–16296 issued to me on September 1, 1950, for the T. S. Mathis Package Store, three and one-tenth miles east on the north side of Highway 96 from Silsbee in Hardin County, Texas. I

live on Highway 96 east of Silsbee in Hardin County, Texas near the Red Top Drive Inn, which is operated by Richard Reeves, and I work for the Kirby Lumber Company. I am fifty-five years of age and have lived in Hardin County nearly all my life.

"In 1947, Richard Reeves came to me and wanted me to take out a package store permit because he could not get one. Reeves told me that he would pay for the package store permit and would pay me Thirty-Five Dollars ($35) a week to work in the package store. I was crippled at the time and had sickness in the family and was unable to work, and I accepted the proposition. Richard Reeves handled all the papers and I signed the application for a package store permit and then worked in the package store for about two months, receiving $35.00 for the first week, and then Richard Reeves cut it to $25.00 a week and said that he would raise it up whenever the package store got to doing better business, but he did not raise it back up and when I was able, I went back to work at the Kirby Lumber Company. Reeves later cut my pay to $15 a week and then, for the last four months, has paid me $10 a week. I secured the first package store permit in 1947 and since that time have signed the renewal applications. This is all that I have had to do with the operation of the package store.

"I do not own the stock at the T. S. Mathis Package Store nor have I ever owned any of the stock; in fact, I do not own the land, the building, the business or any of the liquor stored in this package store, which is located just east of the Red Top Drive Inn on Highway 96 in Hardin County, Texas.

"I am making this statement of my own free will and have not been threatened or offered any reward, but want to make it so as to clear myself and my name of any wrong-doing. I hereby assign any and all rights, title or claim that I might have to any and all liquors kept or stored at T. S. Mathis Package Store, and I hereby authorize representatives of the Texas Liquor Control Board to remove my package store permit, No. P–16296, from the premises of the T. S. Mathis Package Store and I submit it for voluntary cancellation.

"/s/   T. S. Mathis
　　　　　T. S. Mathis

"Sworn and Subscribed Before Me, this the 28th day of November, A.D. 1950

(L.S.)   "/s/   I. M. Thompson
　　　　　　Notary Public in and for
　　　　　　Hardin County, Texas"

This statement, and thus the jury's answer to Issue 5, recites many facts, some material and some not; some of the recitations are evidentiary and others state ultimate facts.

■■ The jury's finding which, in effect, includes the statement of Mathis is in substance equivalent to a special verdict at common law. This sort of verdict is described in McDonald's Tex.Civ. Practice, § 12.02, p. 1050, as one in which "the jury rendered its verdict in the form of a recitation, in narrative style, of the various fact findings which it drew from the evidence." For the form in which such a verdict has been returned see: Pittsburgh, Ft. Wayne & Chicago Ry. Co. v. Ruby, 38 Ind. 294, and also see: Kuhlman v. Medlinka, 29 Tex. at page 389. For more extended comments see: 53 Am. Jur. 696, § 1005, p. 736, §§ 1063 et seq.; 25 Standard Encyc. of Procedure 988 et seq. It is stated at p. 982 of the volume of the work last cited that findings not in issue "may be ignored as surplusage and judgment rendered upon the findings properly made." It is stated at p. 983 that "verdicts have been upheld which find probative facts from which the ultimate facts necessarily result, though something more is needed than the finding of evidence sufficient to establish prima facie the ultimate facts, and it is said that the law must have made the evidentiary facts conclusive evidence of the ultimate facts before a return of the one will be tantamount to finding the other. The mere presence of evidence in the special verdict

does not vitiate if sufficient facts are properly found."

These rules of decision may be applied to the finding under Issue 5. This done, immaterial matters are disregarded and the material statements remaining show conclusively and necessarily the only fact remaining to be established in order to perfect a right of forfeiture, namely, that the seized liquor was not for sale by the only person who had a permit to sell the liquor on the premises. The other facts were proved as a matter of law, as we have stated.

The jury, then, returned an intelligible finding, stating a fact material to the issue before the court.

Some objections were made to this character of submission and these objections are discussed at the close of this opinion. It need only be said here that the objections do not present reversible error. It is provided in Subdivision (b) of Section 42 of the Liquor Control Act that, notice having been given "the case shall proceed to trial as other civil cases." The Texas Rules of Civil Procedure are therefore applicable to the suit, so far as these rules can be applied. T. R. 272 provides that objections not made shall be considered as waived.

Under these circumstances, we see no reason why the finding under Issue 5 should be denied the effect we have given it.

(3) The evidence supports the finding under Issue 5. Mathis admitted that he signed the statement, and the overwhelming preponderance of the testimony is that he did so voluntarily and not under coercion.

Circumstances in proof strongly confirm Mathis' declarations. Thus, Mathis had little time for the store. He was an employee of the Kirby Lumber Corporation, working six days a week when the liquor was seized, and he had been regularly employed by Kirby, devoting his full time to his work, for about a year and a half before the liquor was seized. He had no time for the store except at night. Mathis said that he worked for Kirby because his physician had advised him to use an injured arm.

Further, Mathis was not a business man. He had been a sawmill employee until the store was opened, and when this occurred he was 51 or 52 years old. On the other hand Richard Reeves knew something of the business of selling liquor at retail. Mathis' testimony shows this, and when Mathis secured the permit Richard Reeves was operating the Red Top Drive-Inn, adjacent to the premises on which the store was operated, and sold beer for consumption in this place.

Further, the package store was operated by Richard Reeves and Evelyn Reeves. Mathis said that Richard Reeves advised him how to stock the store originally. Subsequently, at least after the first year during which the store was operated, (the liquor was seized about the end of the third year during which the store was operated) Richard Reeves and Evelyn Reeves bought the liquor which was sold in the store and, in payment for it, drew checks on the bank account mentioned hereinafter.

Mathis testified:

(a) "Q. Did you ever write a single check that went for the payment of that package store? A. No."

(b) "Q. Did Mr. Reeves order everything that was bought out there? A. Mr. Reeves did, or Mrs. Reeves, at that time.

"Q. And they had been doing that for months and months, hadn't they? A. Yes, sir."

Evelyn Reeves testified:

"Q. Who did all this purchasing? A. If I was there I would give the order, and if he (Richard Reeves) was there he would give the order.

"Q. Mr. Mathis, was he ever there at all when you gave an order? A. I don't recall whether he was there or whether he wasn't. He was mostly there at night."

And as is hereinafter stated Evelyn Reeves said that she and her husband gave checks in payment for liquor bought after the first year. Evelyn Reeves worked in the store as a sales clerk and Richard Reeves also sold liquor there.

Further, Mathis had little ready information about the business conducted in the store. He knew that the indebtedness of the store was substantial but apparently had only an indefinite idea about the amount of it. He testified:

"Q. On (the date of seizure) you didn't know what your package store owed, did you? A. Well, not exactly. I knowed it owed a right smart of money.

"Q. And at the time of—this last preliminary hearing, you did not know what it owed, did you? A. No, sir, not off hand."

His information concerning prices, wholesale and retail, and concerning the identity of the persons who had sold liquor to the store on credit was also incomplete. He referred to records for this information. One could infer that the package store would have occupied a greater share of the attention of an owner in Mathis' circumstances.

Further, Mathis said that he received about $150 or $200 a month from the store, but he did not know what the store had paid him in 1949, the year preceding the year in which the seizure occurred. For this information he referred to his income return.

Further, the income of the store was put by Reeves into a bank account in his own name. Evelyn Reeves had authority to draw checks on this account, as did Richard Reeves, and both drew checks against this account in payment for liquor purchased for sale in the store. Evelyn Reeves testified that this was not done the first year, and that it was done afterward. It was at the end of the first year or the first eight months of the store's operation that Mathis gave up the property to Reeves because he was unable to pay for it. However, *Mathis* did *not* have authority to draw checks on this bank account and he never did so. It is significant that Mathis actually did not know of Evelyn Reeves' authority to draw checks against this account. Mathis said that a settlement was had between him and Richard Reeves every Friday and that he "checked" the books, but he had

obviously never examined a check given by Mrs. Reeves.

Further, the store building, the land on which it stood, and the fixtures in it belonged to Richard Reeves. Mathis said that he purchased the property from Richard Reeves, the price being payable in instalments, about the time he got his permit, but had proved unable to pay for it and had reconveyed it to Richard Reeves. He claimed that he was the owner for about a year or eight months, and Mrs. Reeves thought that this period was about eight months. At any rate, Mathis had not been the owner of the property during the two years before the liquor was seized.

Further, the expenses incidental to the operation of this store were heavy in comparison with Mathis' means to pay them and Mathis' means do not convincingly account for the credit which he says that he was extended by persons who sold liquor to the store. Mathis said that the market value of the seized liquor was $15,000. He said also that his profit would have amounted to $6,000 or $7,000 and we accordingly infer that the wholesale price of the liquor was about $8,000 or $9,000. It is Mathis' testimony that none of this liquor had been paid for. He said that he had two part time employees, Evelyn Reeves and a Mrs. Collup, whom he paid $20 a week (always in cash) and for about eight months prior to the seizure he said that he had been paying Richard Reeves $300 a month for the latter's services and as rent for the premises. The only capital available to Mathis which the record shows was derived from a settlement of a Workmen's Compensation claim which he said was made in 1946, for $4,000. Before then he had been paid compensation benefits of $20 a week. From this $4,000 had been deducted a lawyer's fee of 15% and 10%, and Mathis said that about a month before the seizure of the liquor he still had about $3,000 of this money. A year later, when he testified, he had less than $100 of this money. On the other hand Mathis had been unable to pay Reeves $200 per month which he said he had engaged to pay for the property when he bought it in 1947, and

when the original stock of liquor was purchased he said that he paid $800 of the price and that of this $800 he borrowed $500 from Richard Reeves. His wages as an employee of the Kirby Lumber Corporation amounted to about $200 a month, or less.

(4) The statement referred to in Issue 5 and the declarations of Mathis and the other written statement of Mathis, which are referred to in Issues 4 and 3, respectively, concerning the ownership and operation of the store, were admissible on more than one ground. Mathis was a party to the suit, claiming to be the owner of the seized liquor and claiming damages for the seizure; and the statement was admissible against him as proof of the facts recited therein because it was an admission by a party. See Sections 489, et seq. of McCormick & Ray's Texas Law of Evidence. As between the State and Mathis, the proceeding is necessarily inter partes if the application of the doctrine of res judicata made in Coffey v. U. S., 116 U.S. 436, 6 S.Ct. 437, 29 L.Ed. 684, for which appellants contend, is to be applicable. It is not expressly provided that a claimant may intervene, but the provisions of Sec. 42 of the Liquor Control Act requiring notice imply that a claimant may do so, and when this occurs, the rule of evidence ought to apply as between him and the State, for truly the suit is inter partes between them. State v. Intoxicating Liquor, 72 Vt. 253, 47 A. 779. The statements were admissible against the seized liquor because they were the declarations of the permit holder and showed the motive, purpose and intention with which he procured, renewed and held his permit and had it on the premises. The permit was displayed in the store when the seizure was made and an agent of the Board took possession of it at that time. This motive, purpose and intention of the permit holder are relevant to the issue, whether he and not some other person had that liquor there for sale. Declarations by one in a position analagous to that of Mathis have been admitted against property sought to be forfeited. See: Dobbins' Distillery v. United States, 96 U.S. 395, 24 L.Ed. 637.

(5) It was objected by appellants that the declarations of Mathis were hearsay against Richard Reeves and Evelyn Reeves, but no request to limit the declarations was made, and the declarations were rightly admitted because admissible against Mathis and the seized liquor, for reasons already stated. See: Keowne v. Love, 65 Tex. 152, at page 158; Blum Milling Co. v. Moore-Seaver Grain Co., Tex.Com.App., 277 S.W. 78, at page 81; Davis v. Morrison, Tex.Civ.App., 14 S.W.2d 296, p. 298; Houston Cotton Oil Co. v. Trammell, 96 Tex. 598, at page 604, 74 S.W. 899; Massie v. Hutchison, 110 Tex. 558, 222 S.W. 962; Burrell Engineering & Construction Co. v. Grisier, 111 Tex. 477, at page 482, 240 S.W. 899.

If Mathis' declarations were hearsay against Richard Reeves and Evelyn Reeves, these declarations might not support a finding that either of these two were guilty of any act charged against them. See: 17 Tex.Jur. 922, § 416. But the forfeiture of the seized liquor does not depend upon a finding that Richard Reeves or Evelyn Reeves violated the Liquor Control Act. Richard Reeves and Evelyn Reeves disclaimed any interest in the seized liquor; they joined Mathis in adopting Mathis' petition and thereby, with Mathis, alleged that the liquor, the permit, and the business were Mathis's; and Evelyn Reeves so testified, in effect. Under Subdiv. (b) of Sec. 42 of the Act, the suit for forfeiture may be brought against the seized liquor alone. And the provisions of the Act which we have cited above as determining whether the liquor was illicit and subject to forfeiture do not require that the person who wrongfully had the liquor for sale be identified in *this* suit, which is a civil proceeding, compounded of two suits, one by the Board for forfeiture and the other by the claimant of the property sought to be forfeited, praying recovery of the property and for damages.

One of the grounds of forfeiture was the charge against Richard Reeves and Evelyn Reeves, but there was another ground of forfeiture, namely, the charge against Mathis, the claimant here; and the allegations charging Mathis support the proof

and the finding under Issue 5 on which, we conclude, the forfeiture can be put.

(6) Before this suit was filed, the County Attorney filed an information charging that Evelyn Reeves "did then and there sell and possess for sale, within this state, liquor, and at the time of such sale and such possession of said liquor, the said defendant did not have a permit issued by the Texas Liquor Control Board—authorizing the sale and possession of said liquor." This complaint was dismissed at the request of the County Attorney, and the County Court's order of dismissal recites that the reason given by the County Attorney was: "Because the evidence is insufficient to convict the defendant of the offense charged" and that this is "good and sufficient to authorize such dismissal." Nothing else from the record of the County Court was proved except the affidavit for information, and it adds nothing to the documents just mentioned.

This record does not connect the criminal charge against Evelyn Reeves with the subject matter of the present suit, nor does it show the particular defect in the evidence available to the State; and the only evidence of these matters is in parol. The testimony shows that the sale, or sales, charged against Evelyn Reeves were those made by her to a representative of the Board on the day of seizure, which are the sales alleged in the petition charging a forfeiture. The County Attorney testified that he requested the dismissal because the State was dependent upon Mathis' testimony and Mathis had repudiated his previous statements to the representatives of the Board and was claiming that the liquor was his and that Evelyn Reeves was his employee. This testimony was not contradicted. We find that the circumstances required the County Attorney to act, and no other course was open to him than to request dismissal.

■ Appellants argue that the dismissal of the complaint against Evelyn Reeves was res judicata of the grounds of forfeiture charged in this suit. This contention is founded on the decision in Coffey v. U. S., 116 U.S. 436, 6 S.Ct. 437, 29 L.Ed. 684. There is nothing in the proof which shows that any issue involved in this suit was tried in the criminal proceeding, but the appellants' contention is overruled on the following grounds:

(a) The parties to the criminal proceeding and to the suit for forfeiture are different, and the claimant in the suit for forfeiture, that is, Mathis, claims no title from the parties to the criminal proceeding. In Coffey v. U. S., 116 U.S. 436, 6 S.Ct. at page 441, 29 L.Ed. at page 687, it is said: "When an acquittal in a criminal prosecution in behalf of the government is pleaded or offered in evidence by the same defendant, in an action against him by an individual, the rule does not apply, for the reason that the parties are not the same". The court then remarked that the "parties and the matter in issue" in the suit before them were the same as those in the criminal proceeding. In Hill v. State, 22 Tex.App. 579, 3 S.W. 764, a civil judgment was held to be inadmissible in a criminal proceeding because the parties were different, consistently with the quotation from Coffey v. U. S. And the following decisions support the proposition announced at the head of this paragraph: U. S. v. A Lot of Precious Stones & Jewelry, 6 Cir., 134 F. 61; U. S. v. Certain Bottles of Lee's "Save the Baby", D.C., 37 F.2d 137; U. S. v. One 1935 Model Pontiac Sedan Automobile, 6 Cir., 105 F.2d 149; U. S. v. One Dodge Sedan, 3 Cir., 113 F.2d 552; Duncan v. State, 149 Ga. 195, 99 S.E. 612, at page 614; Approximately Fifty Nine Gambling Devices v. People ex rel. Burke, 110 Colo. 82, 130 P.2d 920.

(b) The subject matter of the criminal proceeding is not the same as, or a part of, the subject matter of the suit for forfeiture, at least so far as Mathis, the claimant, and Richard Reeves are concerned. The ground of forfeiture which involves Mathis is that Mathis violated Subdiv. (23) of Sec. 17 of the Liquor Control Act by letting somebody else use his permit, and the ground of forfeiture which involves Richard Reeves is that he had the seized liquor for sale without a permit. Neither charge was made in the criminal proceeding against Evelyn Reeves. On the testimony before us, Evelyn Reeves might have been acquitted without thereby acquitting either

Mathis or Richard Reeves of the charges involving them, and the judgment acquitting Evelyn Reeves would not have required the acquittal of Mathis or of Richard Reeves.

For the rule of decision announced in Coffey v. U. S. to be applicable, it is, of course, necessary that the matter in issue in the two proceedings to be the same. See: U. S. v. Certain Bottles of Lee's "Save the Baby", D.C., 37 F.2d 137; U. S. v. 20 Strings of Seed Pearls, D.C., 34 F.2d 142; Woodman v. U. S., 5 Cir., 30 F.2d 482; Stone v. U. S., 167 U.S. 178, 17 S.Ct. 778, 42 L.Ed. 127.

As regards Evelyn Reeves, the liquor which the information charged her with having for sale seems to be that which she did sell. She actually sold two bottles of liquor to a representative of the Board, and these two bottles are not involved in this suit. The liquor which the State seeks to forfeit does not include these two bottles. At any rate, there is no proof that the liquor which the information charged Evelyn Reeves with having for sale was other than the two bottles she actually sold.

(c) If the dismissal in the County Court is res judicata in behalf of Evelyn Reeves on some issue, this is not material to the forfeiture rendered by the trial court, because Evelyn Reeves alleged and testified that the liquor belonged to Mathis, the claimant. In effect, she disclaimed any interest in the seized liquor.

(7) These comments adjudicate all Points of Error except those now to be mentioned.

Points 8 and 9 are overruled. There was evidence that the seized liquor was for sale in the permit holder's store by some one other than he.

■ Point 10 assigns error to the trial court's action in overruling appellants' objection IV to the charge. This objection was correctly overruled. Since the proof showed as a matter of law that the seized liquor was in the T. S. Mathis Package Store for sale, it was only necessary to procure a finding showing that the liquor was for sale by some one other than the permit holder. It was not necessary under the circumstances that the finding identify the person who had the liquor there for sale. The necessary question was put to the jury in Issue 5; and while this Issue undoubtedly represents an improper method of submission, the particular objection is not made to Issue 5 or to the method of submission which it represents. Subdivision (a) of the objection seemingly calls for an issue inquiring whether Richard Reeves, Evelyn Reeves and T. S. Mathis *jointly* had the liquor there. Such an issue was not necessary to the forfeiture, and it was not required by the evidence. As regards subdivision (b) of the objection, the sales by Evelyn Reeves to the representative of the Board are immaterial to the forfeiture, which is, as we have stated before, the only part of the judgment of which appellants complain. As regards subdivision (d) of the objection, our holding that the facts proved as a matter of law and the finding under Issue 5 support the forfeiture adjudicate this; but we have concluded that the evidence did not raise the issue, whether anyone other than Mathis owned any part of the stock. The evidence is that Mathis owned it all or none.

Point 16 assigns error to the trial court's action in overruling objection XII. This objection was, that the trial court had not submitted the same issues, the omission of which is objected to in objection IV, and Point 16 is overruled for the same reasons which require us to overrule Point 10.

Point 11 assigns error to the trial court's action in overruling objection V, made to Issue 1. Issue 1 seems improper for at least some of the reasons stated in this objection, but the judgment is supported by the finding under Issue 5, and Point 11 therefore presents immaterial matter.

■ Points 12, 13, 14 and 15 assign error to Issues 3, 4, 5 and 6, respectively, which refer to and concern the declarations and written statements by Mathis about the ownership and operation of the package store. Each of these Points assigns as error the trial court's action in overruling a particular objection, and while each of these objections is divided into several subdivisions, stating different grounds of objection, the only ground mentioned in these

Points is, in substance, that the declaration or statement referred to in the particular issue is hearsay, ex parte, and incompetent proof, and nothing else is discussed in the argument under these Points, which are grouped and discussed as a group. Other grounds of the objection are not mentioned or discussed. We therefore construe these Points as bringing forward only the particular ground of objection which is mentioned in these Points, and as showing that appellants have abandoned the other grounds of objection stated in the particular objections mentioned in these Points. Concerning waiver, see the citations listed in note 13 appended to T.R. 418, Vernon's Texas Rules of Civil Procedure, and in the supplement thereto.

We have held in part 4 of the opinion that these statements and declarations of Mathis were admissible against him and against the seized liquor, and that the orders overruling the objections made to the admission of this evidence to which error has been assigned on this appeal did not constitute error, or reversible error. These conclusions require that Points 12, 13, 14 and 15 be overruled.

■ Since other grounds of objection stated in the objections mentioned in Points 12, 13, 14 and 15 have been abandoned it is not necessary to discuss them, but we will refer to some. It was stated in subdivision (d) of the objections on which Points 12 and 13 are based that Issues 3 and 4 are evidentiary. If this is correct, the submission did appellants no harm. Subdivision (d) of Objection IX, the objection mentioned in Point 14, reads: "(d) Because same is entirely evidentiary, does not constitute an ultimate issue of fact and seeks to elicit from the jury its overall opinion of the State's witnesses who testified in connection with said written statement and the defendants' witnesses who testified in connection with same, and same is entirely too broad and actually has

no place in the charge." Issue 5 does call for a finding on some evidentiary matters, but it is not, itself, wholly an evidentiary issue and this is the objection made. For instance, it required the jury to find whether these statements in Mathis' affidavit were true: "I do not own the stock at the T. S. Mathis Package Store;—or any of the liquor stored in this package store." This finding was an ultimate issue, made between the State and Mathis, who claimed the liquor; and since the proof showed as a matter of law that the liquor was in the store for sale, the finding under Issue 5 made the liquor out to be illicit and subject to forfeiture. It is "too broad" in the sense that it requires a finding on immaterial matters and in that it is multifarious, but the inclusion of the immaterial matters was harmless to the appellants and a statement that an issue is "too broad" does not direct the trial court's attention to the question, whether an issue is multifarious. The statement that the issue "actually has no place in the charge" only means that the issue is improper; it directs the trial court's attention to no particular defect and is too indefinite. See T.R. 274, first sentence. Concerning indefinite objections, see: Gulf C. & S. F. Ry. Co. v. Bouchillon, Tex.Civ. App., 186 S.W.2d 1006; Frozen Foods Exp. v. Odom, Tex.Civ.App., 229 S.W.2d 92; McMahan v. Musgrave, 229 S.W.2d 894; Anderson v. Broome, Tex.Civ.App., 223 S.W.2d 901.

■ Point 15 assigns error to the trial court's action in overruling objections to Issue 6. This issue was not answered and therefore could not have done appellants any harm.

These comments adjudicate all Points of Error assigned. All Points of Error are overruled, and the judgment of the trial court is affirmed.

COE, C. J., not participating.