**Dr. G. B. THAXTON et al., Appellants,**

v.

**Maxine REED, Appellee.**

**No. 15659.**

Court of Civil Appeals of Texas.

Dallas.

June 17, 1960.

Rehearing Denied Sept. 30, 1960.

242

Glenn Polk, Dallas, for appellants.

Woodgate & Richards, and John H. McElhaney, Dallas, for appellee.

YOUNG, Justice.

This action was brought by appellee, plaintiff below, for personal injuries arising from an alleged battery committed jointly by appellants Thaxton and Breaux. The battery allegedly took the form of an illegal abortion performed by force and against her will. In response to special issues, the jury found that plaintiff had suffered damages in amount of $7,500, proximately caused by an operation performed by Dr. Thaxton, aided by Breaux; and following the Court's overruling of amended motion for new trial, defendant Thaxton has appealed.

Summarized, the jury issues and answers are as follows: (1) That defendant Dr. Thaxton performed an operation with surgical instruments upon Maxine Reed without her consent on or about February 12, 1958; (2) that plaintiff Maxine Reed suffered injuries from said operation; (3) that such operation was a proximate cause of plaintiff's injuries; (4) that defendant Breaux assisted Thaxton in the performance of an operation without consent of plaintiff Maxine Reed; (5) the sum of $7,500 would reasonably compensate plaintiff for the injuries directly and proximately resulting from said operation.

Appellant presents eight points of error; in substance: (1) of no evidence, or alternatively, of insufficient evidence to support all issues submitted, or form the basis of a judgment; wherefore defendants' motion for instructed verdict or for judgment non obstante veredicto, or motion for new trial should have been sustained; (2) hearsay, conjecture and opinion evidence, as well as unqualified and incompetent medical testimony carry no probative force, and will not support a judgment even when admitted without objections; (3) the verdict was so contrary to overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust, requiring a reversal; (4) where three of plaintiff's ultimate and controlling issues are submitted as a single issue, the same amounts to a general charge, and comment on weight of the evidence, requiring a reversal; (5) one consenting to a criminal abortion may not enrich herself by suing the physician for damages, if he in fact performed the same; and where the evidence preponderantly shows such consent and participation, the result should have been an instructed verdict; (6) where plaintiff's attorney during jury argument addresses a juror by name, asking a question on merits of the case, such is highly prejudicial and reversible; (7) jury misconduct was shown in their consideration of matters outside the record, which was prejudicial to the rights of defendant; and (8) excessiveness of verdict;

the facts and circumstances at least requiring a substantial remittitur.

Defendant Breaux did not appear at the trial, although his attorney appeared and participated therein; Dr. Thaxton denying the charges in detail, with cross-action of false arrest and malicious prosecution which was withdrawn and abandoned during course of trial.

Maxine Reed, forty-two years of age at time of trial, was a divorcee with history of four previous marriages. According to her pleading she had been having illicit relations with Breaux, a married man, for some years previous to 1958; having reason to believe in December 1957 that she was pregnant; going to defendant Thaxton on February 12, 1958 on advice and insistence of Breaux for an examination and determination of true condition. On going to Thaxton's office she alleged that Breaux and the Doctor:

> "Did grab and restrain your Plaintiff and then forcibly placed her upon a table, and while the Defendant Breaux forcibly held your Plaintiff on the table, the Defendant Thaxton violated your plaintiff's private parts with various steel surgical instruments and did in fact perform an abortion, all against the wishes and desires of your Plaintiff."

Defendant Thaxton at all material dates has been a duly licensed and practicing physician in the city; and testified in substance that Maxine Reed came to his office on February 12, complaining of trouble with menstruation and wanting to know what was wrong with her; that if Chester A. Breaux accompanied her, he did not recall it, although such person may have been in the anteroom; that he examined and treated Miss Reed who was a willing patient; that he in nowise used any force throughout the examination, no anesthetic or "shots", nor was she strapped down in any manner; that it would have been impossible for him to treat a woman patient or perform the acts of which plaintiff charges

him without her consent and cooperation. His examination, revealed he said, that if she were pregnant, the outer "os" of the uterus or womb was open, with emission of bloody substance therefrom, indicating no pregnancy but some sort of infection; that necessary treatment involved washing out of vagina, which he did by hand, using a cleansing solution, finally packing vagina with one and one-half yards of gauze, with instructions to remove same the next day so that the fetid matter and dead embryo (if she had been pregnant) would be expelled; and that he never at any time used or placed any metal or surgical instruments into her womb as plaintiff alleged; with no cutting or mutilating of womb in any manner.

Of a 430 page statement of facts, defendants' testimony covers 67 pages, that of plaintiff some 166 pages, both direct and cross; and to appellants' challenge of the record as wholly insufficient to support all jury issues, appellee in reply brief sets forth excerpts of testimony which she says amply justifies her submission of issues and jury answers involving the cause of action alleged and amount of damages awarded.

(From plaintiff) "A. We got in his car and he (defendant Breaux) drove me to Dr. Thaxton's office.

"Q. All right, why did you get in his car? A. He told me to, he was going to take me to Dr. Thaxton's office.

"Q. For what purpose? A. For a medical examination. * * *

"Q. And then what happened? A. Well, he (Dr. Thaxton) said for me to remove my pants and he would give me a pelvic examination to determine my pregnancy. * * *

"Q. And then what happened? A. He got Chester into the room.

"Q. And then what happened? A. He told Chester to hold me.

"Q. Told Chester to hold you? A. Uh-huh.

"Q. What, if anything, did you do at that time? A. I began fighting. * * *

"Q. Did you see the Doctor? A. Yes, sir.

"Q. Where was he? A. He was at the foot of the examination table that I was lying on.

"Q. Did he touch you? A. Yes, sir.

"Q. Where? A. In my exposed parts.

"Q. Do you know what he did? A. No, sir.

"Q. Did you feel anything? A. Yes, sir.

"Q. What did you feel. A. Severe pain.

"Q. Where? A. In my vital and exposed parts.

"Q. On the outside or on the inside of them? A. It was on the inside.

"Q. Was it very far inside? A. Yes, sir.

"Q. Did you say anything? A. I was crying and screaming. * * *

"The Court: Testify only to what you know.

"Q. Did you feel anything? A. Felt some instruments.

"Q. Well—

"Mr. Polk: I object to that as being an opinion and conclusion, that she felt an instrument, what she would feel, an instrument, or what she would know—whether it was an instrument.

"The Court: I overrule the objection.

"Mr. Polk: We except to the Court's ruling.

"Q. Do you know what you felt? A. Yes, he was cutting and probing and cutting.

"Q. Did you feel him cut? A. Yes.
* * *

"Q. What was hurting? A. I was having terrible labor pains, my pelvis, my womb.

"Q. Have you had labor pains before? A. Yes.

"Q. Have you had stomach aches before? A. Yes, sir.

"Q. Are they the same? A. No, sir.

"Q. You know from your own knowledge that they were labor pains? A. Yes, sir.

"Q. All right; when did you first start having them? A. February 12, about three hours after Dr. Thaxton had finished.

"Q. Do you recall about what time of the day you first called Dr. Morgan on the 13th of February? A. It was early in the morning, I believe.

"Q. And what other symptoms did you have at that time? A. I was hemorrhaging; I had high temperature."

(Dr. Morgan) "Q. For what purpose was she admitted to the hospital? A. Well, clinically the vaginal bleeding and cramping, and persistent pelvic pain.

"Q. Do your records indicate how long that had been present? A. Yes, since the—since the 20th when she made—I made a residence visit on the 20th of February; intermittent episodes since the 20th of February.
* * *

"Q. Would you tell us the last time you saw this patient? A. Was the 9th of April.

"Q. What was her condition at that time in your opinion? A. Her condition—

"Q. Professionally. A. —was in my opinion, a persistent low grade infection in the womb, which had spread into the left tube at the time. * * *

"Q. Was the patient able to work at that time, hold gainful employment, normal work? A. You mean physically able?

"Q. Yes. A. Was she physically able? No, not at that time." (The time Dr. Morgan referred appellee to a specialist.)

(From Dr. Murphy Bounds) "Q. All right, sir: Doctor, based on your diagnosis of Miss Reed, state whether or not in your opinion she would be able to work or maintain a normal work load? A. At that time she could not.

"Q. Uh-huh. Do you have any opinion as to the duration of the disability? A. Well she was disabled from that period of time that I saw her, and inasmuch as she was not well I recommended that she have some surgery done in order to improve her problem.

"Q. What surgery did you recommend, Doctor? A. Removal of the part that was involved.

"Q. Removal of the part—what part—what was that? A. The uterus principally."

■ In appellants' extensive brief, he points to various so-called deficiencies in the testimony on behalf of plaintiff; arguing that at least the jury answers were so opposed to overwhelming weight of the evidence as to be clearly wrong. For example (1) when plaintiff was asked if a woman could not close her legs to prevent someone from inserting something up and into her female organs, she answered "this was not true"; the testimony being characterized as

contrary to common knowledge; (2) that by plaintiff's own admissions, she had voluntarily and willingly submitted to such examination and treatment as was given; (3) similarly as to use by defendant of metal or surgical instruments at the time; plaintiff admitting that she did not see any instruments; the contention being that such issue was not raised by the evidence, but based purely on surmise and conjecture; the court ruling in such connection that plaintiff could testify only to what she knew or felt. Above analysis of plaintiff's case is made from view point of defendant. However, according to our view of the entire record, testimony of the two principals or parties is simply in full conflict on the basic issue of an assault; plaintiff claiming that her visit extended only to an examination. Therefore under the test of either the "no evidence" Rule, Cartwright et al. v. Canode, 106 Tex. 502, 171 S.W. 696, or that applicable to "insufficient evidence", In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, we hold that appellants' first three points must be overruled.

■ Point four relates to inclusion of the words "with surgical instruments" in issue No. 1, again objected on ground of no evidence or insufficient evidence to support such form of question; also that the issue was thereby rendered evidentiary, a comment on weight of the evidence, amounting to a general charge, as a wrongful placement of the burden of proof and not relating to an ultimate issue of fact. These latter objections are not argued; appellant here complaining only that the issue includes several elements of fact and hence multifarious. Such objection, if valid, was not called to the court's attention until included in amended motion for new trial and is therefore waived as not in compliance with Rule 274, Texas Rules of Civil Procedure, requiring that objections, to be reviewable, must be made prior to submission of the charge to the jury. Mathis et al. v. State, Tex.Civ.App., 258 S.W.2d 200.

■ Point five is predicated upon an assumed consent to an operation amounting to an illegal abortion, precluding plaintiff from recovery of damages. But the jury has found that the plaintiff did not consent to such an operation; her testimony in support already quoted adequately raising a jury question of consent.

■ Appellant complains of improper jury argument by plaintiff's attorney, not taken down by the court reporter but brought forward by bill of exceptions; that Mr. Richards made the following statement, addressing one of the jurors, Mrs. Mary Moore, as follows: "That the plaintiff was suing these defendants for the sum of $100,000.00 damages, and now, Mrs. Moore, you don't think that's too much to ask for in a case of this kind, do you?" That said argument was objected to as highly improper, prejudicial and inflammatory; Judge Peurifoy in his qualification of the bill stating that said objection was sustained, but overruling motion of attorney for Breaux for a mistrial. That thereafter the court reprimanded plaintiff's counsel in these words "Mr. Richards, that was an improper statement to make to a jury"; the bill as qualified going on to say: "The Court does not have an independent recollection at this time as to whether or not a request was made that the jury be instructed to disregard the statement of plaintiff's counsel, Mr. Richards, but the Court is sure that had such request been made, the jury would have been so instructed." Manifestly, the court's announced ruling and reprimand, relative to the stated impropriety, rendered same entirely harmless.

The jury in this case was comprised of eleven women and G. V. Vestal, the foreman. Invoking Rule 327, jury misconduct is charged on part of the women jurors in their giving and receiving of testimony, both outside the record and hearsay, concerning experiences, personal and of others; they "submitting and offering an uncontradicted, fact and personal knowledge of matters which could only be proven and established by legal, competitent medical testimony on the witness stand." Principal

matters of improper discussion among jurors were alleged to be as follows: That the distance from outside of vagina to womb was such that medical instruments were necessary for packing with gauze as did Dr. Thaxton; also whether it was difficult or not for a patient wearing high-heeled shoes to remove her feet from "stirrups" on either side of the examination table. There was no evidence bearing on the matters just related except that reflected in testimony of plaintiff and defendant Thaxton.

■ At the hearing on misconduct the jury was interrogated at length, various women members having previously been to doctors and had had physical examinations; and although jurors cannot become witnesses during a trial, it is well settled that they may weigh and discuss the evidence in light of their experience of life and common knowledge. Motley v. Mielsch, 145 Tex. 557, 200 S.W.2d 622. As to whether the jury discussions went beyond this and into the field of hearsay, the testimony of various members is somewhat confusing and self-contradictory; some testifying to no knowledge of any particular misconduct. For example, we quote excerpts from testimony of several jurors:

(Miss Moncrief) "Q. Did you hear any woman at all in the jury room say they just knew you had to have an instrument to pack cotton up in the vagina? A. No, sir.

(Mrs. Gully) "Q. Did any individual woman discuss that she knew that from her own personal experience? A. No, sir.

"Q. Then you all were just guessing at it, that a doctor would have to have an instrument to get up there? A. We just discussed the testimony of the case; there was no personal story related or experience. * * *

"Q. But did state they knew of or had friends who had medical examinations and put their feet in the stirrups

on the table didn't they? A. I don't remember anyone saying that they had friends or anything like that.

(Mrs. Cundiff) "Q. Do you remember her making the statement that not of her own experience but someone that she knew had gauze and that they had to have an instrument to get up in there? A. No, sir.

"Q. You don't remember her making that statement? A. No, sir.

"Q. Do you remember anyone making that statement in the jury room? A. No, sir, I do not.

(Mr. Vestal) "Q. Did you answer the questions that the Court gave you based on the evidence you heard and on the instructions the Court gave you? A. We based everything on what we were instructed by the Judge."

■ Under Rule 327, Misconduct of Jury, the burden is upon the complaining party to establish an affirmative of the charges made from a preponderance of the evidence; and where the trial court, by overruling of motion for new trial, has impliedly found that the misconduct did not occur, its effect is as binding upon an appellate court as a jury verdict upon conflicting evidence. Gulf Oil Corp., v. Walker et al., Tex.Civ.App., 288 S.W.2d 173. And the reviewing court is required to consider the testimony adduced in a light most favorable to such trial court's finding. Holt v. City of San Marcas, Tex.Civ.App., 288 S.W.2d 802.

Appellant strongly argues excessiveness of verdict "requiring a substantial remittitur". Elements of damage (reasonable compensation) resulting directly and proximately from said operation were (1) physical pain and mental suffering, if any, from date of injury to time of trial; (2) loss of earnings over similar period; (3) physical pain and mental suffering, if any, in the future; (4) diminished capacity to labor

and earn money, if any, in the future; (5) reasonable and necessary medical and hospital expense from February 12, 1958 to date of trial. Testimony of Doctors Morgan and Bounds in the latter connection has already been shown; their bills for medical service and hospital subsequent to date of alleged injury was some $746; and it is argued that if pain and suffering during disability (February 12, to March 2, date of consulting lawyer) be established at $500, plus earning of $200, then her damage could not have exceeded $1,446. But such argument is merely from the standpoint of defendant, and does not fully encompass plaintiff's own testimony. Aside from this there is no evidence in the record by which a proper amount to be remitted can be ascertained. The hearing on misconduct of jury reflects no indication of bias or prejudice on their part. There is no basis for reversal on ground of excessive damages alone when we cannot say that the verdict is opposed to the great weight and preponderance of the testimony as a whole. Thompson v. Clement et ux., Tex.Civ.App., 202 S.W.2d 341.

The judgment under review is therefore affirmed.

CRAMER, J., not sitting.

### On Rehearing

■ Rule 455, T.C.P. Notwithstanding the resume of testimony above, which in our opinion was sufficient support for the judgment rendered, appellant requests extensive supplemental findings; to be found, for example, in testimony of plaintiff and both Doctors Morgan and Bounds. The latter were witnesses for plaintiff, the testimony relating to their subsequent treatment and conclusions with respect to plaintiff's condition; evidentiary in nature and bearing on issues other than Number One. "* * * it is never necessary, under our rules of practice, to find facts that are undisputed in the record, or recite evidence which may tend to conflict with findings made." Order of United Commercial Travelers of America v. Roth, Tex.Civ. App., 159 S.W. 176, 179; 4 Tex.Jur.2d p. 434. However, it is true that Dr. Bounds on inquiry of what caused the physical condition of plaintiff made answer: "I don't know what caused it." In this connection, we find in the record no medical testimony by any physician to effect that the injuries complained of by appellee were directly or proximately caused or were the result of the single treatment of February 11, 1958 given appellee by Dr. Thaxton. Also that prior to the occurrence, Dr. Thaxton had stepped out into the hall, and when he returned, "was carrying something covered up with a towel"; that plaintiff did not see any instruments and did not know what he was carrying.

The supplemental findings sought by appellant from the testimony of jurors on charges of misconduct were likewise evidentiary; the excerpts therefrom in original opinion demonstrating, without more, the existence of a fact question involving misconduct, determined by the trial court from a preponderance of the evidence as not proven.

■ Appellant further objected to the form of Issue Number One as amounting to a "general charge." It is held in Frozen Foods Express v. Odom, Tex.Civ.App., 229 S.W.2d 92, that such an objection is insufficient compliance with Rule 274, T. C.P., requiring that a party objecting to a charge must point out distinctly the matter to which he objects and the grounds of his objection.

Motion for rehearing is overruled.